# KEOKUK AND WESTERN RAILROAD COMPANY *v.* SCOTLAND COUNTY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF MISSOURI.

No. 414.   Argued December 21, 22, 1893. — Decided March 12, 1894.

A railroad company which derives its title to its road from a foreclosure of a mortgage, given before the commencement of a suit by stockholders to enjoin the collection of taxes upon the property so sold and conveyed, does not occupy a relation to the plaintiffs in that suit, which entitles it to file a bill of revivor, or to invoke the decree in the suit as an estoppel.

The purchaser under a mortgage is not entitled to the benefit of an estoppel under a decree obtained in a suit begun after the execution of the mortgage.

THIS was a bill in equity filed by the Keokuk and Western Railroad Company to revive a suit begun August 6, 1879, by Charles A. Secor and other stockholders of the Missouri, Iowa and Nebraska Railway Company against the judges of the county courts of Scotland, Schuyler, and Clarke Counties, the object of which suit was to enjoin the collection of taxes

upon such railway company for the year 1879 and several years prior thereto. .

. The bill of revivor, which was filed February 17, 1890, set forth the commencement of the suit by Secor against the county courts above named, and the rendition of a decree May 10, 1882, by which the defendants were enjoined from levying or collecting taxes of the railway company "until the expiration of the exemption limited in the charter of said railway company, to wit, December 1, 1892," and that the same was in full force and effect. The bill further alleged the execution of a mortgage in 1870 by the railway company to the Farmers' Loan and Trust Company of New York, the foreclosure of the same, the purchase of the road in 1886 by Morris K. Jesup and Henry C. Thatcher, a purchasing committee of the bondholders, and the conveyance of the same to the plaintiff, the Keokuk and Western Railroad Company, in December, 1886, whereby the Missouri, Iowa and Nebraska Railroad Company became dissolved, and Secor and the other stockholders ceased to have any interest therein, and "that by virtue of said mortgage, decree, and foreclosure sale all of the title in and to said property has become vested in your orator." The bill further alleged a change in the officers of the respective defendant counties, the beginning of three suits by the collector of revenue of Scotland County, to enforce, as a lien upon plaintiff's property, the taxes levied upon the Missouri, Iowa and Nebraska Railroad Company for the years 1872 to 1878, 1880, 1881, 1882, and 1887, and that the same were in violation and contempt of the injunction issued in the *Secor case.* The bill prayed that such suit might be revived against the counties and their officers in the name of the plaintiff, as the same was at the dissolution of the Missouri, Iowa and Nebraska Railway Company, and that the collector of revenue of Scotland County be punished for contempt in instituting the suits for the collection of the taxes in violation of the decree upon the original bill.

On March 3, 1890, defendants interposed a demurrer to the bill for the county of Scotland, which was sustained on March 25, upon the ground that the plaintiff did not occupy such a

relation to the parties to the original suit as to entitle it to file a bill of revivor, and that the decree in such original suit could not be invoked as an estoppel between the Keokuk and Western Railroad Company and the several counties which were made defendants to the bill. The court put its decision upon the ground that the plaintiff acquired its title by the foreclosure of a mortgage executed in 1870, and that it did not appear that the mortgagee or any representative of the mortgagee was made a party to the suit of Secor *et al.* against the railway company and the several counties. Coupled with the order sustaining the demurrer was a general order granting plaintiff leave to amend its bill.

Plaintiff thereupon, and on April 28, 1890, filed an amended bill, setting up that in September, 1880, the Missouri, Iowa and Nebraska Railroad Company leased its road for a term of years to the Wabash Railway Company, the lease containing an agreement that the Missouri, Iowa and Nebraska Company should execute a mortgage to the Mercantile Trust Company of New York to secure certain bonds which were to be guaranteed by the Wabash Company, and covenanting that it would cause the holders of the bonds of 1870 to accept the bonds so guaranteed by the Wabash Company in lieu of the prior bonds, and averring that the decree of foreclosure of the bonds of 1870 was not executed or the railroad property sold thereunder. That in pursuance of such lease the mortgage to the Mercantile Trust Company was executed March 1, 1881, and 2269 bonds were issued and guaranteed by the Wabash Company; that all of the 1870 bonds were exchanged for the guaranteed bonds, with the exception of 17; that the Wabash Company paid interest upon the same until June, 1884, the decree of foreclosure remaining unexecuted, when the Wabash Company became insolvent; that in 1886 the Farmers' Loan and Trust Company filed a supplemental bill of foreclosure against the Missouri, Iowa and Nebraska Railroad Company, the Mercantile Trust Company, the Wabash Company, and the Humeston and Shenandoah Railway Company, upon which a final decree of foreclosure was entered and the property ordered to be sold; that upon the confirmation of such

sale the Missouri, Iowa and Nebraska Company, the Humeston and Shenandoah Company, and the Mercantile Trust Company were each ordered to execute and deliver to the purchaser deeds of the property; that in pursuance of such decree the property was sold in 1886, and Jesup and Thatcher became the purchasers; that these purchasers having conveyed the property to the plaintiff the same was turned over to it in December, 1886; that subsequently, in pursuance of such decree, the Missouri, Iowa and Nebraska Company and the Mercantile Trust Company executed to Jesup and Thatcher their respective deeds of conveyance of all their interest in the railway property, and that Jesup and Thatcher afterwards, for a valuable consideration, and in further execution of their said trust, conveyed the same to the plaintiff.  Plaintiff further averred that the mortgage of the Mercantile Trust Company was made after the original injunction proceedings were commenced; that by the title acquired through the foreclosure of the same, and the several deeds of conveyance to it, plaintiff became entitled to all the rights and privileges of the injunction decree in the original suit, and to have the same revived against the defendants.  To this amended bill the officers of Scotland County filed an answer, denying that any title was acquired by the plaintiff through the lease of 1880, or the mortgage of 1881, but that all such title was acquired through the foreclosure of the mortgage of 1870, and the sale thereunder in 1886.  The answer further averred that the whole of the contract, lease, and mortgage of 1880 and 1881 was an abortive attempt to provide against a foreclosure and sale under the mortgage of 1870, and having failed, the whole of said proceedings were practically rescinded by order of the court in which the foreclosure proceedings were carried on.

On January 10, 1891, upon the supplemental bill, the answers, replication, and proofs, a final decree was entered dismissing the bill of revivor upon the ground that plaintiff's title to the property related back to the mortgage of 1870, and that it acquired no title under the mortgage of 1881.

From this decree an appeal was taken to this court.

*Mr. Felix T. Hughes* and *Mr. John F. Dillon*, (with whom was *Mr. Thomas De Witt Cuyler* on the brief,) for appellant.

*Mr. F. L. Schofield*, (with whom were *Mr. John A. White-side* and *Mr. T. L. Montgomery* on the brief,) for appellees.

MR. JUSTICE BROWN delivered the opinion of the court.

This case raises the question whether the Keokuk and Western Railroad Company, which is now the owner of the property and franchises of the Missouri, Iowa and Nebraska Railroad Company, is entitled to revive a suit originally begun by Secor and other stockholders of the last-named company, against the officers of three counties in Missouri, to enjoin the collection of taxes upon property formerly belonging to the Missouri, Iowa and Nebraska Railroad Company and now owned by the plaintiff.

(1) Upon demurrer to the original bill, the court held that the plaintiff, deriving its title from the foreclosure of a mortgage given before the suit which it sought to revive had been begun, did not occupy such a relation to Secor and the other stockholders, plaintiffs in the original suit, as entitled it to file the bill or invoke the decree in that court as an estoppel. In the case just decided of the *Keokuk and Western Railroad Company* v. *State of Missouri, ante*, 301, we held the principle of that ruling to be correct. Upon the same day that the order sustaining the demurrer was entered, viz., March 25, 1890, leave was granted to amend the bill, whereupon, and obviously for the purpose of meeting the objection raised by the court that the only title to the property claimed by the plaintiff was one derived from the foreclosure of the mortgage of 1870, plaintiff, on April 18, 1890, procured a deed from Jesup and Thatcher of their interest under the foreclosure of the mortgage of 1881 to the Mercantile Trust Company, and, on April 28, filed an amendment to its bill of revivor, setting up this and other deeds as evidence of title through the mortgage of 1881, which was given after the original injunction proceedings were commenced by Secor, and claiming that, by

its title through the foreclosure of this mortgage, and through the various deeds of conveyance following the same, plaintiff was entitled to the benefit of the injunction decreed in the Secor suit, and to have the same revived and enforced against the defendants.

The court, however, found from the record evidence that the plaintiff derived its title to the property in controversy through the mortgage of June 1, 1870; that its title to the property in question related back to that mortgage, and hence the complainant was not entitled to the benefit of the original decree. In this conclusion we also concur. The facts in this connection, so far as we gather them from the pleadings, appear to have been that a bill to foreclose the mortgage of June 1, 1870, was filed December 30, 1879, a decree of foreclosure rendered thereon October 22, 1880, and the property ordered to be sold. Pending this foreclosure, and on February 12, 1880, the Missouri, Iowa and Nebraska Railway Company, the mortgagor, with the consent of a majority of the bondholders under the mortgage of June 1, 1870, entered into the contract with the Wabash Company to lease its road, and to induce the bondholders to surrender their bonds, and take in exchange therefor bonds of the Wabash Company which were to be secured by a new mortgage upon the Missouri, Iowa and Nebraska Company. Pursuant to such contract, the lease was executed on September 3, 1880, for a term of ninety-nine years, and the Wabash Company entered into possession of the road. On March 1, 1881, in pursuance of the contract and lease, a mortgage was executed to the Mercantile Trust Company to secure the payment of 2269 bonds made by the Wabash Company, with a provision that all the bonds that should be received by the trustee in the course of the exchange for the bonds secured by the mortgage of 1870 should be retained by the trustee for the protection of the bondholders.

The Wabash Company, having become insolvent in 1885, the Farmers' Loan and Trust Company, for the purpose of enforcing their decree of foreclosure of October 22, 1880, filed a supplemental bill setting forth the proceedings sub-

sequent to the decree, and the failure of the lessee company to pay the rental, alleging that it never was the intention of the bondholders under the first mortgage that their bonds should be cancelled, or the decree of October 22, 1880, vacated or annulled, or the right to execute the same be in any way abrogated or impaired; but that it was the design that the old bonds, having been exchanged, should remain in the hands of the Mercantile Trust Company, to be used in pursuance of the trust. The bill further charged that the decree of October, 1880, was still in full force, and that the rights of the parties interested could not be fully protected otherwise than by a judicial sale of the road and other property covered by the first mortgage. The bill prayed for the enforcement of the decree of October 22, 1880, and for the same relief that the plaintiff might have had in case the matters subsequent to the decree had not occurred, and that the former decree might be promptly and immediately executed.

A decree upon this supplemental bill was entered on July 8, 1886. The decree adjudged that *the facts set forth in the supplemental bill of complaint were true;* that the decree of October, 1880, was still in full force, and was not reversed, vacated, or discharged. After setting forth the subsequent proceedings connected with the Wabash lease, the exchange of the bonds, etc., the failure of the mortgagor to pay the bonds and mortgages mentioned in the decree, it ordered the mortgaged premises *described in the decree of October, 1880,* to be sold. The sale was made August 19, 1886, and was subsequently, confirmed, and a deed executed by the master to Jesup and Thatcher, purchasers, who subsequently, and on November 26, 1886, executed a deed to the Keokuk and Western Railroad Company.

From the maze of bills, supplemental bills, bills of revivor, decrees, and deeds involved in this case we think the following facts clearly appear — (1) That the decree of October 22, 1880, was a decree for the foreclosure of the mortgage of 1870, and of that alone; (2) that the supplemental bill of the Farmers' Loan and Trust Company was filed to enforce

that decree; (3) that, in the decree of July 8, 1886, rendered upon such supplemental bill, .17 bonds issued under the mortgage of 1870, which had never been exchanged, were provided for as valid liens under that mortgage, and under that alone; (4) that the bonds held by the Mercantile Trust Company, as trustee, which had been exchanged for the prior bonds, were also recognized as claims secured by such mortgage; (5) that in such decree no mention was made of the mortgage of 1881, except by way of recital, and as part of the history of the case; (6) that the sale ordered was a sale in pursuance of the prior decree; (7) that in the master's deed to Jesup and Thatcher, and in their deed to the Keokuk and Western Railroad Company, no allusion whatever was made to the mortgage of 1881.

There was, it is true, a proviso in the last decree that, by way of a more ample protection to the purchasers, the defendants, the Missouri, Iowa and Nebraska Railway Company, the Humeston and Shenandoah Railway Company, and the Mercantile Trust Company should execute deeds of the property to the purchasers, and that in pursuance of such order the deeds of 1890 were executed. But it is clear that nothing in fact passed by such deeds, since the deeds of the master to Jesup and Thatcher, and their deed to the Keokuk and Western Railroad Company had already conveyed all the interests of the defendants to the property in question.

The truth is that in these proceedings the mortgage of 1881 was treated as an abandoned security, and was practically ignored in the foreclosure proceedings which culminated in the sale of the road. The deeds of 1890 were evidently an afterthought for the purpose of procuring some kind of title under the mortgage of 1881, and of meeting the decision of the court sustaining the demurrer to the original bill of revivor.

(2) Plaintiff, however, makes a further claim that, under the law of Missouri for the taxation of railroads, the property and all interests therein are taxed as a whole to the company and no one else, and that proceedings against the company by suit or otherwise will divest the mortgagees of their rights

as well as the company itself, notwithstanding they are not made parties to the proceedings; that the bondholders or their trustees are privies to such tax proceedings at law, and that inasmuch as the Secor suit was a bill in equity to prevent a multiplicity of tax suits, which would become necessary in the various years in which the tax was to be collected, during the limited exemption, it follows that if the railroad company becomes the legal representative of the bondholders, or their trustee in the tax suit at law, the same would be true in a proceeding in equity to enjoin such taxes.

Granting the general principles above stated to be correct, that a lien for taxes upon the property is a lien upon all the interests in such property, and that proceedings to enforce such lien will oust the mortgagees of their lien, we do not think the latter part of the proposition follows, that these bondholders or their trustees were privies to the suit in equity to enjoin such taxes. Indeed, it is difficult to see how the fact that the mortgagees would be bound in a proceeding by the State to enforce its lien for taxes would have any bearing upon the point in controversy. The bill sought to be revived is a bill to enjoin the taxes for 1879 and prior years, and the question was whether the plaintiff was entitled to the benefit of the decree in that case. This depended, not upon the question whether the lien of the State for taxes overrode the mortgagees' lien, but whether under the settled principles of law the purchaser under the mortgage is entitled to the benefit of an estoppel under a decree obtained in a suit begun after the execution of his mortgage. We hold that it would not have been estopped by that decree, if such decree had been adverse to Secor in that suit, and hence as estoppels must be mutual, it cannot claim the benefit of an estoppel in this case. The Secor bill was a bill to enjoin the collection of taxes for certain years; if the court had decided that the plaintiffs were not entitled to such injunction, but that the taxes were valid, we know of no reason why the Keokuk and Western Railroad Company would thereby be estopped to maintain a bill of its own for the same purpose, as it derived its title to the property in question from a mortgage long antecedent to the com-

mencement of the suit by Secor. This seems to have been the view taken by the Supreme Court of Missouri in *Stafford* v. *Fizer*, 82 Missouri, 393, in which that court held that although the lien of the State for taxes ranks all other liens whether prior or subsequent, yet in a suit to enforce such lien, the holder of a junior incumbrance must be made a party, if it is desired to divest him of his rights; otherwise he will be entitled to redeem from the purchaser under the tax lien. See also *Gitchell* v. *Kreidler*, 84 Missouri, 472.

The decree of the court below was correct, and it is, therefore,

*Affirmed.*