## POSTAL TELEGRAPH CABLE COMPANY *v.* CITY OF NEWPORT, KENTUCKY.

### ERROR TO THE COURT OF APPEALS OF THE STATE OF KENTUCKY.

No. 273.    Argued January 18, 21, 1918.—Decided June 10, 1918.

This court will review and correct the error of a state supreme court, in assuming a state of facts without any support in the record as a basis for denying asserted federal rights.

When the case has been disposed of on the pleadings, every uncontradicted allegation by the unsuccessful party must be taken as true, including denials of material facts previously averred by his opponent.

The sole ground upon which a judgment against a prior owner is conclusive against his successor in interest is that the estoppel runs with the property, that the grantor can convey no better right or title than he had himself, and that the grantee takes *cum onere.*

Hence, a judgment holding a telegraph company bound by a license agreement with a city touching the use of the streets, but rendered in a suit begun after the company had conveyed to another, does not estop its remote successor in interest from claiming against the city that the agreement was never accepted.

While *res judicata* ordinarily is a matter of state law, a decision of the state court which denies asserted federal rights through the application of a former judgment will not conclude this court, if such application be clearly inconsistent with the right to due process of law.

It is a violation of the due process of the Fourteenth Amendment for

a State to give conclusive effect to a prior judgment against one who
was neither a party, nor in privity with a party, therein.
160 Kentucky, 244, reversed.

THE case is stated in the opinion.

*Mr. John Randolph Schindel,* with whom *Mr. Morison
R. Waite* was on the briefs, for plaintiff in error.

*Mr. Brent Spence* for defendant in error.

MR. JUSTICE PITNEY delivered the opinion of the court.

On December 5, 1895, the council of the City of New-
port, Kentucky, passed an ordinance purporting to grant
to the Postal Telegraph Cable Company and its succes-
sors, subject to certain limitations, the right and privilege
of erecting poles and stretching wires over the streets and
alleys of the city necessary to the establishment, operation,
and maintenance of a telegraph system connecting that
city with other towns and cities. Among its provisions
were these: (a) that unless the company should within
thirty days, and in writing, accept the grant subject to
the limitations, the grant should become void; (b) that
nothing in the ordinance should be construed as granting
a franchise to the company; and (c) that the company
should pay to the city a "special license tax" of $100 per
annum. This company was a New York corporation
having the same name as that of plaintiff in error, and
will be referred to hereinafter as the first New York com-
pany.

On or about January 1, 1897, that company conveyed
its property in the State of Kentucky, including all its
rights and interests in the City of Newport, to another
New York corporation known as the Commercial Cable
Company; in 1898 this company conveyed the same
property and privileges to another New York corporation

known as the Commercial Cable & Telegraph Company; and on or about December 31, 1900, all of said rights and property were transferred and conveyed by the latter company to the plaintiff in error, the Postal Telegraph Cable Company, which is a corporation of the State of Kentucky, and since then has owned and operated the property.

In 1908 suit was brought in a state court by the city against plaintiff in error (hereinafter referred to as defendant) to recover "license taxes" as specified in the ordinance for a series of years, and a judgment in favor of the city for the years 1903 to 1907 inclusive was sustained by the Court of Appeals of Kentucky, notwithstanding certain contentions of defendant based upon the provisions of the Constitution of the United States respecting the regulation of commerce among the States and the establishment of post offices and post roads (Art. 1, § 8, pars. 3 & 7), upon the Act of Congress of July 24, 1866 (c. 230, 14 Stat. 221; Rev. Stats. U. S. § 5263 et seq.) and upon the "equal protection" clause of the Fourteenth Amendment. 160 Kentucky, 244. A writ of error under § 237, Judicial Code (Act of March 3, 1911, c. 231, 36 Stat. 1087, 1156), issued before the taking effect of the Act of September 6, 1916, c. 448, 39 Stat. 726, brings the judgment here for review.

The case was decided upon the pleadings and exhibits, which latter included a copy of the ordinance and what was treated as a transcript of the record of a previous suit brought by the city against the first New York company in a state court of Kentucky to recover license taxes under the ordinance for two years ending December 5, 1898, resulting in a judgment in favor of the city, which was affirmed by the Court of Appeals, opinion reported in 25 Ky. Law Rep. 635; the judgment being pleaded as a bar to the defense set up in this action.

The pleadings in the present suit are so involved and

prolix that a particular recital of them would be tedious.
We will present a sufficient summary to show the questions
raised and how they were disposed of.

The city alleged the passage of the ordinance, and
averred that shortly after its passage and in pursuance of
it the first New York company erected poles and strung
wires in the streets, and established, operated, and main-
tained a telegraph system in the city, and thereby the
ordinance became a binding contract between the city
and the company; but that defendant had failed and re-
fused to pay the sum of $100 per annum for the several
years in question, in disregard of its contract.

Defendant's answer alleged that at the time of the
enactment of the ordinance defendant was not in existence,
and that the Postal Telegraph Cable Company therein
referred to was the first New York company; denied that
either that company or defendant in any manner or at
any time accepted the ordinance, or that the same became
a binding contract between plaintiff and either company;
admitted that shortly after its passage the first New York
company began the erection of its poles and wires and the
establishment of its telegraph system, but denied that
this was done under or by virtue of the ordinance; alleged
on the contrary that that company did not accept but
declined to accept the ordinance, as plaintiff well knew,
and that the poles were erected and wires strung in and
over the streets and alleys of the city by the company
under another and independent claim of right, as plaintiff
well knew; that that company had accepted the Act of
Congress approved July 24, 1866, c. 230, 14 Stat. 221;
Rev. Stats. U. S. § 5263, *et seq,* and acts amendatory
thereof, and had complied with their terms, and thereby
obtained the right to construct, maintain, and operate its
lines of telegraph over and along all post roads of the
United States; that under § 3964, Rev. Stats. U. S., and
the Act of Congress of March 1, 1884, c. 9, 23 Stat. 3, all

the streets and alleys of the City of Newport were such
post roads, and by virtue of these provisions of the laws of
the United States said New York company was entitled to
erect its poles and string its wires over and along the
streets and alleys of the city, and did so under that author-
ity and not in pursuance of any acceptance of the ordi-
nance, nor under any contract with the city.

Partly in an amendment to the answer, and partly in a
rejoinder filed at the same time in response to plaintiff's
reply, defendant set up the conveyance by said New York
company on or about January 1, 1897, of all its property,
rights, and lines of telegraph in the State of Kentucky and
elsewhere, including its rights over the roads, streets and
alleys in said State and in the various cities and munici-
palities thereof, to the Commerical Cable Company, a
corporation of the State of New York; set up the subse-
quent conveyances of the same property as we have re-
cited them, terminating with the conveyance to the de-
fendant on or about December 31, 1900; alleged that from
January 2, 1897, until June 30, 1898, the Commercial
Cable Company of New York operated the Kentucky
lines in the name of the Postal Telegraph Cable Company
of New York; that from June 30, 1898, until December 31,
1900, the Commercial Cable & Telegraph Company of
New York did the same; and that since the last mentioned
date defendant had owned and operated and still owned
and operated said lines, and was entirely separate and dis-
tinct from the first New York company and had no rela-
tions with it; that since the last mentioned date defendant
had been engaged in operating and maintaining a system of
telegraphy in the State of Kentucky between cities and
towns in that State and, in connection with other com-
panies, between various other cities and towns in other
States; that before the last mentioned date defendant had
accepted the Act of Congress of July 24, 1866, and had
complied with its terms and ever since had been subject

thereto, and thus had obtained the right to construct, maintain, and operate its lines of telegraph over the streets and alleys of the City of Newport, and was doing so pursuant to this right and not by virtue of any contract with the city.

Defendant in its answer further set up that the payment of $100 per annum mentioned in the ordinance was not imposed as a rental but as a special license tax; and that it was not a reasonable rental or a reasonable or lawful exaction as a license tax. Also that the ordinance was void and inoperative because said right and privilege was not conferred in accordance with § 164 of the constitution of the Commonwealth of Kentucky then in force, and § 3068, Kentucky Statutes. And also that the alleged contract was beyond the powers of the city, *ultra vires*, and void.

Defendant further alleged that other telegraph companies and telephone companies were using the streets and alleys of the city for poles and wires in a manner substantially similar to their use by the first New York company and by defendant; that none of these companies was subject to the payment of any license tax or was required to pay or agreed to pay any compensation to the city by way of rental, license, or otherwise; that the attempted exaction from defendant of $100 per annum was an unreasonable discrimination between defendant and other telegraph and telephone companies, contrary to the laws of the State of Kentucky and in violation of the constitution of that State, and also in violation of the first section of the Fourteenth Amendment to the Constitution of the United States; and also that it was an unreasonable, excessive, and unlawful exaction, in violation of those provisions of the Constitution of the United States conferring upon Congress the power to regulate commerce among the States and to establish post-offices and post-roads (Art. 1, § 8, pars. 3 & 7), and the laws

enacted in pursuance thereof, and was therefore null and void.

In what was entitled a "second amended petition," but was ordered by the court to be taken as a reply to defendant's answer, plaintiff set up in substance that in a suit brought by it against the first New York company on September 9, 1899, the city alleged that the ordinance of December 5, 1895, was a contract consented to by that company and under which it derived and enjoyed its privilege to erect poles and string wires in the streets and alleys of the city and establish and maintain a telegraph system therein, that in consideration of this right and privilege the company agreed to pay to the city the sum of $100 per year as specified in the ordinance, and that under its terms $200 was due to the city for two years ending December 5, 1898, for which recovery was prayed; and that in this action a judgment was rendered in the trial court in favor of the city for the amount claimed, which was affirmed by the Court of Appeals of Kentucky, its opinion being reported in 25 Ky. Law Rep. 635. The same pleading alleged that the Postal Telegraph Cable Company of Kentucky, defendant in the present action, was the same Postal Telegraph Cable Company that was organized under the laws of the State of New York and was defendant in the former action, or that defendant was the lessee or successor, and succeeded to all the rights, privileges, and duties of the defendant in the former action, and was using, operating, and controlling the same poles, wires, and equipment as those used, operated, and controlled by the defendant in the former action; and plaintiff pleaded said proceedings and judgment as a bar to the defense set up in the present action.

By way of rejoinder, defendant denied its identity with the Postal Telegraph Cable Company of New York, defendant in the former action, denied that defendant in

the present action was the lessee or successor of said
company or had succeeded to all its rights, or to any of
its rights under the ordinance, and denied that it had
succeeded to any of the duties of said New York company.
In the same pleading were the averments respecting its
acquisition of title to the property, its operation thereof,
and its want of relation with the New York company,
which we have recited.

The Court of Appeals, in disposing of the case (160
Kentucky, 244), laid aside the questions that were raised
under both state and federal law as to the validity and
effect of the ordinance, including the authority of the city
to grant the privilege or exact the tax, upon the ground
that the first New York company had agreed to the ordi-
nance, and it and its successors, including defendant, had
since been in possession of the streets under and by virtue
of it, and would not be heard to dispute its validity while
thus occupying the streets.   Referring to the statement
in the ordinance that it was not to be construed as grant-
ing a franchise, the court said: "Doubtless it was well
known that a franchise such as is contemplated and re-
quired by the [state] constitution could not be secured in
this way.   In accepting the use of the streets under this
ordinance, the company merely obtained the right, for
the stipulated compensation, to occupy the streets until
such time as the city might see proper to revoke the
license.   But so long as the company occupies the streets
under the license it must pay the agreed price.   The com-
pensation provided by the ordinance is not a license tax
upon the right of the company to do business in the city,
but merely a charge against the company for the use of
the streets with its poles and wires."   The contention
that the exaction of $100 per annum for the use of the
streets was unreasonable was passed by a reference to the
previous decision, where it was held (25 Ky. Law Rep.
637) that the question of the reasonableness of the grant

and what was a fair compensation for the servitude was a question for the parties to decide. Finally, the contention that the enforcement of the ordinance denied to defendant the equal protection of the laws was rejected upon the ground that it did not appear that any other telegraph company was occupying the streets of Newport under a grant like the one conferred by the ordinance in question; the court declaring that a corporation accepting a privilege under one grant cannot complain that other corporations are occupying the streets under different grants imposing other conditions, and that cities may make reasonable classifications of grants and privileges, and attach dissimilar conditions and impose dissimilar burdens upon each class, without violating the equal protection feature of the Federal Constitution.

It will be observed that every point raised by defendant, whether of fact or of state or federal law, was held immaterial upon the ground that (a) the first New York company had accepted the grant subject to the payment of the charge of $100 per annum; (b) its liability to pay the same had been adjudicated in the former suit; and (c) defendant, as successor to the rights and privileges of that company, was concluded by the former judgment against it.

It is true that, in answer to the assertion of a right under the Act of Congress of July 24, 1866, to erect poles and string wires in the streets without the consent of the city, the court declared that the act did not take from the city the right to charge a telegraph company for using its streets a reasonable compensation in the way of a license fee or occupation tax, citing *St. Louis* v. *Western Union Telegraph Co.*, 148 U. S. 92, and *Western Union Telegraph Co.* v. *Richmond,* 224 U. S. 160. In each of these cases, however, it was assumed, in the absence of anything to the contrary, that under the state constitution and laws the municipality represented the public in the control of

the streets (148 U. S. 100; 224 U. S. 171); in the *St. Louis Case* it was so held upon rehearing (149 U. S. 465); in both cases it was held that the question of reasonable compensation was a question of fact, to be determined in the usual way (148 U. S. 104–105; 224 U. S. 171–172); and in the *St. Louis Case*, upon a retrial, the ordinance charge was found to be unreasonable in fact (166 U. S. 388, 391). But in the present case, both the power of the city under the constitution and laws of the State, and the reasonableness in fact of the charge of $100 per annum, were denied by defendant, and the court declined to pass upon either question, deeming that defendant was concluded upon both points by the consent of its predecessor.

We assume that if the first New York company did at the outset accept the ordinance, either in writing according to its terms or by erecting poles and wires and occupying the streets thereunder or in any other manner satisfactory to the city, that company and its successors in the ownership of the telegraph system, including defendant, were bound to comply with the terms of the ordinance as to the "special license tax" (which evidently in that case would be regarded as an agreed rental), so long as they continued to retain and enjoy the privileges conferred; that in that event every claim of federal right here asserted would be without foundation; and that, if the fact of acceptance had been conclusively adjudged in a former proceeding against defendant or its privy, the same result would follow.

But the question arises, whether the basis of fact upon which the state court rested its decision denying the asserted federal rights has any support in the record; for if not, it is our duty to review and correct the error. *Southern Pacific Co.* v. *Schuyler*, 227 U. S. 601, 611; *North Carolina R. R. Co.* v. *Zachary*, 232 U. S. 248, 259; *Carlson* v. *Curtiss*, 234 U. S. 103, 106; *Norfolk & Western Ry. Co.* v.

*West Virginia*, 236 U. S. 605, 610; *Interstate Amusement Co.* v. *Albert*, 239 U. S. 560, 567.

Since the case proceeded to judgment upon the pleadings, it is elementary that every uncontradicted allegation of fact by the unsuccessful party must be taken as true. This applies to the denial by defendant that either it or the first New York company accepted the ordinance, the averment that the latter company declined to accept it and erected its poles and strung its wires in the streets of the city under another and independent claim of right as plaintiff well knew, and other averments bearing upon the question of acceptance in fact.

There remains only the adjudication in the former suit against the first New York company, which we assume to have been sufficiently pleaded, and to have substantially involved the points that are now material so as to make them *res judicata* in a subsequent suit between the parties and their privies although based on a different demand (*Cromwell* v. *County of Sac*, 94 U. S. 351, 352; *Wilson's Executor* v. *Deen*, 121 U. S. 525, 534; *Nesbit* v. *Riverside Independent District*, 144 U. S. 610), and which the Court of Appeals regarded as concluding defendant upon matters of fact as well as law. But there is nothing in the record to make this judgment conclusive as against defendant except upon the theory of a privity of estate between it and the first New York company. And, as to this, it appears from the averments in defendant's pleadings—indeed, it is stated as a fact in the opinion of the court—that the suit against that company was brought in the year 1899, two years after it had conveyed its property in the State of Kentucky, including all its rights and interests in the City of Newport, to another corporation through which defendant afterwards acquired title.

The ground upon which, and upon which alone, a judgment against a prior owner is held conclusive against his successor in interest, is that the estoppel runs with the

property, that the grantor can transfer no better right or title than he himself has, and that the grantee takes *cum onere.* From this it follows that nothing which the grantor can do or suffer after he has parted with the title can affect rights previously vested in the grantee, for there is, no longer privity between them. This doctrine is universally accepted, and was applied by this court in *Keokuk & Western R. R. Co.* v. *Missouri*, 152 U. S. 301, 314; *Keokuk & Western R. R. Co.* v. *Scotland County*, 152 U. S. 318, 322; *Dull* v. *Blackman*, 169 U. S. 243, 248; *Old Colony Trust Co.* v. *Omaha*, 230 U. S. 100, 122. We infer that its obvious application to the facts of this case was inadvertently overlooked by the Court of Appeals, because the general principle is recognized in previous decisions of that court as a limitation upon the doctrine of *lis pendens.* *Clarkson* v. *Morgan's Devisees,* 45 Kentucky (6 B. Mon.), 441, 446, 453; *Parks* v. *Smoot*, 105 Kentucky, 63, 67.

*Res judicata*, like other kinds of estoppel, ordinarily is a matter of state law, and as the decision of the state court in this case in effect rests upon that ground, this of itself would be sufficient to sustain the judgment against reversal in this court, except for two queries that must first be answered: (a) Is the question of state law, in this case, independent of the federal questions? and (b) Is the decision reached upon that point sufficiently well founded to furnish adequate support for the judgment? *Eustis* v. *Bolles*, 150 U. S. 361, 366; *Southern Pacific Co.* v. *Schuyler*, 227 U. S. 601, 610; *Enterprise Irrigation District* v. *Farmers Mutual Canal Co.*, 243 U. S. 157, 164.

Waiving the doubt whether, under the particular facts of this case, the question of *res judicata* can be regarded as independent of the federal questions that were raised, we are of the opinion that the decision reached upon it is so clearly ill founded that it cannot sustain the judgment;

and this for the reason that it is inconsistent with another federal right of defendant, fundamental in character.

The doctrine of *res judicata* rests at bottom upon the ground that the party to be affected, or some other with whom he is in privity, has litigated or had an opportunity to litigate the same matter in a former action in a court of competent jurisdiction. *Southern Pacific R. R. Co.* v. *United States,* 168 U. S. 1, 48; Greenleaf Ev., §§ 522–523. The opportunity to be heard is an essential requisite of due process of law in judicial proceedings. *Windsor* v. *McVeigh,* 93 U. S. 274, 277; *Louisville & Nashville R. R. Co.* v. *Schmidt,* 177 U. S. 230, 236; *Simon* v. *Craft,* 182 U. S. 427, 436. And as a State may not, consistently with the Fourteenth Amendment, enforce a judgment against a party named in the proceedings without a hearing or an opportunity to be heard (*Pennoyer* v. *Neff,* 95 U. S. 714, 733; *Scott* v. *McNeal,* 154 U. S. 34, 46; *Coe* v. *Armour Fertilizer Works,* 237 U. S. 413, 423), so it cannot, without disregarding the requirement of due process, give a conclusive effect to a prior judgment against one who is neither a party nor in privity with a party therein.

It follows that in this case *res judicata* cannot be regarded as an adequate support for the judgment; and since, without that, we have not the materials necessary for a proper disposition of the federal questions that were raised, we express no opinion upon them.

*Judgment reversed, and the cause remanded for further proceedings not inconsistent with this opinion.*