By the Court.
The record contains evidence in support of the finding of facts made by the court of appeals, and in harmony with its uniform practice under similar circumstances this court will not further inquire as to the weight of the evidence. From this finding of facts it appears that for more than a year prior to and on the day of the injury to the defendant in error, Bessie Hinton, The Western Strawboard Company was the owner and in absolute control and possession of all the assets of The Bloomer Brothers Company, which had in fact ceased to exist; that the Strawboard Company continuously and exclusively operated the plant entirely for and on account of itself until it transferred all its property to the plaintiff in error; that during all this time no officer or other person for or on behalf of the Bloomer Company, exercised any dominion over any of the property or business of that company, although thé business and plant were operated ostensibly as a separate concern and the books were kept by the Strawboard Company as though the Bloomer Company were operating' the plant; that by the arrangement the Strawboard. Company had agreed to save harmless the stockholders of the Bloomer Company from liability for.all indebtedness of every description due from the Bloomer Company; that the Strawboard Com-, pany procured and paid for the liability insurance policy “solely in its "own behalf and f.or its own purposes;” and that, in pursuance of notice from the Strawboard Company, the Casualty Company employed counsel to defend the suit brought by Bessie Hinton.
*515 In such circumstances the conclusion is unavoidable that during that period whatever acts were done in the conduct of the business, whatever liabilities were created, were in legal effect the acts and liabilities of the Strawboard Company.
So far as this case is concerned, the essential things are that the injury to Bessie Hinton was actually caused by the Strawboard Company; that any negligent acts done in causing it were the acts of that company; and that any legal liability which resulted from such wrongful or negligent acts attached to and against the Strawboard Company. The Bloomer Company, as found by the court, had “ceased to exist.” The Strawboard Company having procured the liability insurance policy and paid for it “solely in its own behalf,” and having pursuant to its terms procured the Casualty Company to defend the suit of Bessie Hinton and employ counsel to that end, it will be presumed to have done so because it had caused the injury and because of its knowledge that any legal liability on account of it was its own liability.
But it is earnestly contended that as the suit was against the Bloomer Company, and the Strawboard Company by name was not a party to the suit, the court of appeals erred in its conclusion of law . that the judgment of Hinton against the Bloomer Company was a judgment against the Strawboard Company.
It is elementary that in order that a judgment may be conclusive against a party he must have had opportunity to he heard. This is a necessary requisite of due process of law.
*516 The decisive question in this case is whether there was due process of law against the Straw-board Company.
It is urged that a recent case decided by the supreme court of the United States, Postal Telegraph Cable Co. v. City of Newport, Kentucky, 247 U. S., 464, rules this case.
In that case there were three separate and distinct companies, and it was held that there was not such privity of estate between successor companies and the original holding company as to conclude the successors as to a judgment rendered two years after the original company had parted with title.
The court say at page 470: “By way of rejoinder, defendant denied its identity with the Postal Telegraph Cable Company of New York, defendant in the former action, denied that defendant in the present action was * * * successor of said company or had succeeded to all its rights,” etc. And at page 474 the court say: “Since the case proceeded to judgment upon the pleadings, it is elementary that every uncontradicted allegation of fact by the unsuccessful party must be taken as true.”
In discussing the conclusive effect of judgment, it is said by the court at page 476:
“The doctrine of res judicata rests at bottom upon the ground that the party to be affected, or some other with whom he is in privity, has litigated or had an opportunity to litigate the same matter in a former action in a court of competent jurisdiction. * * * The opportunity to be heard is an essential requisite of due process of law in *517 judicial proceedings. * * * And as a State may not, consistently with the Fourteenth Amendment, enforce a judgment against a party named in the proceedings without a hearing or an opportunity to be heard * * *, so it cannot, without disregarding the requirement of due process, give a conclusive effect to a prior judgment against one who is neither a party nor in privity with a party therein.”
Now in this case there is no attempt to hold two different companies, two separate active entities. There was but one company in fact and law which committed the wrong, and that company, the Straw-board Company, was the real and active defendant in the case. There was no such company as the Bloomer Company actually in existence at the time of the injury and at the time of the beginning of the suit. It had lost its identity and was merged in the identity of the Strawboard Company, which defended the suit.
The wrongdoer was in court defending the suit, with full opportunity to be heard, and exercising that privilege.
A wrongfully injures B, and B brings suit intending to make A the party defendant, but sues him by a wrong name. A comes into court and makes defense to the merits, but says nothing about the misnomer. Judgment is entered for plaintiff. The real party has had his day in court and is bound by the judgment.
In 21 R. C. L., 1324, it is said: “All the cases agree that one summoned by a name not his own and who appears and does not plead misnomer *518 waives it, and is bound by the judgment in the wrong name.” See also 3 Cyc., 524, and cases cited.
Moreover, it appears in this case that in her petition Bessie Hinton averred on information and belief that the Bloomer Company had entirely lost all corporate existence and had been succeeded by the Strawboard Company, which at the time was the real owner and party in interest. She attached interrogatories for the defendant Bloomer Company to answer. The court on motion struck out these averments and sustained a demurrer to the interrogatories.
In view of the facts afterward developed and found by the court of appeals, it must be said that the motion and the demurrer were filed and urged by the Strawboard Company, which was in complete control of the defense, in that case. It will not now be heard to assert a misnomer, nor to object that it was not named as defendant, as it had itself in fact insisted that the suit proceed against the Bloomer Company, which it was aware had lost its existence, although the Strawboard Company conducted the business ostensibly as a separate concern.
There is a consistent determination by courts to look through corporate forms, and this disposition is shown with increasing firmness as the interests of justice require.
In State, ex rel., v. Standard Oil Co., 49 Ohio St., 137, it was held: “That a corporation is a legal entity, apart from the natural persons who compose it, is a mere fiction, introduced for con *519 venience in the transaction of its business, and of those who do business with it; but like every other fiction of the law, when urged to an interest and purpose not within its reason and policy, may be disregarded.”
To the same effect are The Cincinnati Volksblatt Co. v. Hoffmeister, 62 Ohio St., 189; First Natl. Bk. of Chicago v. Trebein Co., 59 Ohio St., 316, and Parkside Cemetery Assn. v. The C., B. & G. L. Traction Co., 93 Ohio St., 161, 168.
The court below properly held that the judgment was in law a judgment against the Straw-board Company.
As shown in the finding of facts which we have set out in the statement of this case, the plaintiff in error here succeeded to the business and all the property of the Strawboard Company, and plaintiff in error was a mere continuation and reorganization of the Strawboard Company. With the exception of the nominal owner of one share, the incorporators and initial subscribers to the capital stock were the same persons who held the Strawboard Company stock, though in different amounts. The amount of indebtedness assumed by the plaintiff in error, the amount of cash paid to and the amount of stock in the Box Board. Company issued to the stockholders of the Strawboard Company were substantially equal to the value of the assets acquired by the Box Board Company, exclusive of the Hinton judgment.
The preamble of the resolution of the plaintiff in error, making its offer to buy, recites: “This company was incorporated for the purpose of pur *520 chasing and taking over all the property and business of The Western Strawboard Company.”
The authorities cited in defendant in error’s brief sustain the proposition that in these circumstances the plaintiff in error, being a mere continuation of the Strawboard Company, whose stockholders received the cash from and stock in the new company, is liable for the payment of the judgment involved in this case. We also cite Andres v. Morgan, Trustee, 62 Ohio St., 236, to the same effect.
The judgment will be affirmed.

Judgment affirmed.

Nichols, C. J., Jones, Wanamaker, Robinson, Johnson and Donahue, JJ., concur.
Matthias, J., not participating.