*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CHARTER TOWNSHIP OF PORT HURON,

   Plaintiff-Appellee,

UNPUBLISHED
November 30, 2023

v

PAUL HARRY CHURCHILL and ANNETTE
SANDRA CHURCHILL,

   Defendants-Appellants.

No. 363272
St. Clair Circuit Court
LC No. 21-001801-CE

Before: O'BRIEN, P.J., and K. F. KELLY and M. J. KELLY, JJ.

PER CURIAM.

   Defendants, Paul and Annette Churchill, appeal as of right the trial court order granting summary disposition under MCR 2.116(C)(7) to plaintiff, the Charter Township of Port Huron. For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

   The Churchills own property in Port Huron Township. Around 2013, they began to raise animals on the property for their own consumption so that they could avoid antibiotics. Initially, they only raised chickens, however, by 2018, they had chickens, ducks, turkeys, pigs, goats, rabbits, and a llama. They also gradually added structures to their property to care for and shelter their animals. At first, the Township of Port Huron did not object to the Churchills raising animals on the property; however, as the number of animals increased, the number of complaints regarding nuisances such as noxious odors and "floating feathers" also increased. According to a zoning administrator, the Township did not immediately pursue an action against the Churchills because the applicable zoning ordinance was "kind of vague." The ordinance, however, was amended. Thereafter, a code enforcement employee wrote a municipal citation alleging three violations of the ordinance: (1) failure to obtain building permits for detached structures used in connection with keeping animals on the property, (2) failure to maintain the property in sanitary conditions vis-à-vis the stockpiling of manure, and (3) maintaining animals on the property in excess of the numbers permitted under the ordinance.

The citation was issued solely to Paul, who challenged it in the district court. Relevant to the issues raised in the current appeal, Paul argued that the local ordinance was preempted by the Right to Farm Act (RTFA), MCL 286.471 *et seq*., and he presented evidence in support of that position. "According to the plain language of the RTFA, a farm or farming operation cannot be found to be a nuisance if it is commercial in nature and conforms to the [Generally Accepted Agricultural Management Practices (GAAMPs)]." *Charter Twp of Shelby v Papesh*, 267 Mich App 92, 101; 704 NW2d 92 (2005). "Whether a farm conforms to the GAAMPs is decided according to policies adopted by the Michigan Commission of Agriculture." *Id*. "[A] local ordinance is preempted when it purports to extend or revise the RTFA or GAAMPs." *Id*. at 106, citing MCL 286.474(6). Thus, the Township ordinance would be preempted by the RTFA if the Churchills' property was a farm or farming operation that was commercial in nature and that conformed to the GAAMPs. But if the property was not a farm or farming operation, or if it did not conform to the GAAMPs, then the ordinance would control. In this case, following an evidentiary hearing the district court found that the RTFA defense was not applicable because the Churchills' farm did not conform to the applicable GAAMP.

Paul appealed to the circuit court, which remanded to the district court to make necessary factual findings regarding the "time element" of the RTFA defense. The "time element" was important because the key factual dispute was whether the property was "commercial in nature" prior to the implementation of the 2014 GAAMPs. If the district court found that the farm was commercial in nature before the implementation of the 2014 GAAMPs, then the ordinance would be preempted, but if the court found that the farm did not have a commercial nature after the implementation of the 2014 GAAMPs, then the ordinance would control. On remand, the district court found that the commercial nature began "no earlier than 2015" and that the operation did not comply with the 2014 site selection GAAMP.

Paul again appealed to the circuit court, arguing that the district court clearly erred by finding that he began selling farm products no earlier than 2015; in support, he noted that the district court found him to be "100% credible," and he directed the circuit court to his testimony that he *probably* began selling animal products in 2013. The circuit court determined that the district court's factual findings were not clearly erroneous, so it affirmed. Paul applied for leave to appeal in this Court, but the application was denied.[1] Likewise, our Supreme Court denied his application for leave to appeal.[2]

Despite the finding that the Churchills' property was in violation of the ordinance, Paul and Annette continued to maintain animals and structures in violation of the ordinance. Therefore, the Township brought a claim for abatement of nuisance. In their answer, the Churchills raised the RTFA and the doctrine of latches as defenses. The Township responded that res judicata and *collateral estoppel* barred the RTFA defense and denied that latches was applicable. Subsequently, the Township moved for summary disposition, asserting that there was no dispute that the ordinance was being violated by the Churchills and arguing that res judicata precluded the

---

[1] *Twp of Port Huron v Churchill*, unpublished order of the Court of Appeals, entered November 18, 2020 (Docket No. 354211).

[2] *Twp of Port Huron v Churchill*, 507 Mich 932 (2021).

Churchills from raising the RTFA as an affirmative defense. The Township further argued that latches was inapplicable because each day that the Churchills violated the ordinance was a new violation. Moreover, the Township contended the Churchills did not change their position based upon the Township ignoring their conduct; instead, the Township tried to work with the Churchills before amending their ordinance and, after it was amended, they sought to encourage compliance through code enforcement efforts. In its reply brief, the Township argued that collateral estoppel also precluded the Churchills from raising the RTFA as an affirmative defense.

In response, the Churchills argued that res judicata—i.e., claim preclusion—did not bar their defense under the RTFA because affirmative defenses are not claims, because newly-located evidence and witnesses supported Paul's testimony that he started selling farm products in 2013, and because they never had an opportunity to argue that the RTFA was a defense to an abatement action, which is a claim that could not have been brought in the district court proceedings. They also asserted that regardless of whether res judicata applied to Paul it did not preclude Annette from raising a RTFA defense because she was not in privity with Paul during the prior action. Finally, they argued that latches barred the Township's abatement action because the ordinance was passed in 2015 and, between 2015 and 2022, the Township did not take any action to enforce the ordinance against Annette. They asserted that Annette was prejudiced because she had made various improvements to the property without any interference by the Township.

Following oral argument, the trial court determined that the RTFA defense was barred by res judicata and collateral estoppel, that Annette was in privity with Paul, and that the doctrine of latches did not bar the abatement action. This appeal follows.

## II. SUMMARY DISPOSITION

### A. STANDARD OF REVIEW

The Churchills argue that the trial court erred by granting Port Huron summary disposition based upon the court's determination that res judicata barred their affirmative defense under the RTFA. They also argue that res judicata does not apply to Annette because she was not in privity with Paul during the prior action. We review de novo a trial court's decision on a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). Likewise, we review de novo whether the doctrine of res judicata bars a claim, *Duncan v Michigan*, 300 Mich App 176, 194; 832 NW2d 761 (2013), or whether the doctrine of collateral estoppel bars litigation of an issue, *Radwan v Ameriprise Ins Co*, 327 Mich App 159, 164; 933 NW2d 385 (2018).

### B. ANALYSIS

Michigan generally recognizes two preclusion doctrines: res judicata and collateral estoppel. Res judicata precludes relitigation of claims, whereas collateral estoppel prevents relitigation of issues. *Allen Park Retirees Ass'n, Inc v City of Allen Park*, 329 Mich App 430, 444-

445; 942 NW2d 618 (2019) (citations omitted).[3] "The preclusion doctrines of res judicata and collateral estopped serve an important function in resolving disputes by imposing a state of finality to litigation where the same parties have previously had a full and fair opportunity to adjudicate their claims." *Id*. (quotation marks and citation omitted). In this case, the trial court determined that the Churchills RTFA defense was barred by both doctrines.

## 1. PRIVITY

We first address the Churchills argument that Annette was not in privity with Paul during the prior action. Annette was not named as a party in the earlier action. As a result, neither res judicata nor collateral estoppel will preclude her from raising a defense under the RTFA unless she was in privity with Paul during the prior action. See *People v Zitka*, 335 Mich App 324, 344; 966 NW2d 786 (2020) ("Under either doctrine, the proponent must demonstrate the existence of privity in connection with the earlier action.").

On appeal, the Churchills contend that there is a lack of privity because, under the common law, a husband and a wife are generally not in privity with each other. In support, they cite decisions from Nebraska, New York, Oregon, Illinois, and Vermont. See *Hickman v SW Dairy Supplies, Inc*, 194 Neb 17, 26; 230 NW2d 99, 105 (1975) (generally no privity between a husband and wife "where the action concerns their separate property, rights, or interests not derived from each other."); *Stamp v Franklin*, 144 NY 607, 611; 39 NE 634, 634 (1895) ("Husband and wife are for most purposes distinct persons at law, and an adjudication in an action to which a wife is a party alone, without her husband, neither binds him in a subsequent action, to which he is a party, nor can he avail himself of the benefit of the adjudication on the ground merely that he was the husband."); *Wolff v Du Puis*, 233 Or 317, 321; 378 P2d 707 (Or 1963), overruled in part by *Bahler v Fletcher*, 257 Or 1; 474 P2d 329 (1970) ("[I]t appears to be well settled that the husband and wife are not necessarily in privity"); *Blair v Bartelmay*, 151 Ill App 3d 17, 21; 502 NE2d 859 (1986) (stating that privity between the parties is not created solely by the parties being husband and wife); and *Gilman v Gilman*, 115 Vt 49, 51; 51 A2d 46, 47 (1947) (noting that multiple cases "show that there is no privity between a husband and a wife in" cases where they are enforcing independent rights). Noticeably, the Churchills fail to cite to any Michigan caselaw addressing privity between a husband and a wife. Moreover, they misapprehend the basis upon which the trial court found them to be in privity. The trial court did not find them in privity because they were married. Rather, the court found them in privity based upon their joint interest in the animals and farm operations that are at issue in the current case and that were at issue in the prior action.

---

[3] The United States Supreme Court has formally recognized a third preclusion doctrine known as "defense" preclusion, see *Lucky Brand Dungarees, Inc v Marcel Fashions Group, Inc*, ___ US ___, ___; 140 S Ct 1589, 1595; 206 L Ed 2d 893 (2020), but the parties do not argue for or against the adoption of defense preclusion. Rather, the Township contends that the RTFA defense is barred by both claim preclusion and issue preclusion, and the Churchills only argue that claim preclusion does not bar their defense. We, therefore, leave for another day the matter of defense preclusion.

Looking to Michigan caselaw, it is clear that Annette and Paul are in privity with each other with respect to the animals and farm operations. "To be in privity is to be so identified in interest with another party that the first litigant represents the same legal right that the later litigant is trying to assert." *Adair v Michigan*, 470 Mich 105, 122; 680 NW2d 386 (2004). "The outer limit of the doctrine traditionally requires both a substantial identity of interests and a working functional relationship in which the interests of the nonparty are presented and protected by the party in the litigation." *Id*. (quotation marks and citations omitted). Here, it is uncontroverted that both Annette and Paul have a property interest in the animals and in the farm operation. Indeed, Annette argues on appeal that a finding of privity would deprive her of "a cognizable property interest" without due process of law. Because Paul and Annette have the same interest in the property and farming operation at issue, and because Paul and Annette have a working functional relationship that allowed Paul to present and protect Annette's interests in the earlier litigation, the trial court did not err by finding them to be in privity.

Next, the Churchills contend that a finding that Annette is in privity with Paul would result in a deprivation of her due process rights. We disagree. In *Postal Telegraph Cable Co v City of Newport*, 247 US 464, 476; 38 S Ct 566; 62 L Ed 1215 (1918), the United States Supreme Court noted that it would violate the Fourteenth Amendment to the United States Constitution if a state gave "conclusive effect to a prior judgment against one who is neither a party *nor in privity* with a party therein." (Emphasis added). Indeed, Michigan courts have recognized that "a litigant need not always have been a party to a judgment in order to be bound by it.' " *Beyer v Verizon North Inc*, 270 Mich App 424, 431; 715 NW2d 328 (2006), quoting *Richards v Jefferson Co, Ala*, 517 US 793, 798; 116 S Ct 1761; 135 L Ed 2d 76 (1996). "The most notable exception to the general rule occurs when it can be said that there is 'privity' between a party to the second case and a party who is bound by an earlier judgment." *Beyer*, 270 Mich App at 431 (quotation marks and citation omitted). In light of the above authority, we conclude that because Paul and Annette are in privity with each other, there is no due-process violation.

## 2. COLLATERAL ESTOPPEL

We next address the doctrine of collateral estoppel. On appeal, the Churchills only challenge the trial court's determination that res judicata precluded their RTFA defense. Because the trial court also precluded their defense based upon collateral estoppel, even if this Court were to conclude that the trial court erred by applying res judicata, any error would be harmless. Stated differently, because there are two independent grounds to preclude the Churchills from raising the RTFA in the present action, and because they have only challenged one of those grounds, they cannot prevail on appeal.

Moreover, even if the Churchills had challenged the trial court's determination that their RTFA defense was barred by collateral estoppel, reversal is not warranted. "Collateral estoppel bars relitigation of an issue in a new action arising between the same parties or their privies when the earlier proceedings resulted in a valid final judgment and the issue in question was actually and necessarily determined in that prior proceedings." *Bryan v JP Morgan Chase Bank*, 304 Mich App 708, 715; 848 NW2d 482 (2014) (quotation marks and citation omitted). "The doctrine bars relitigation of issues when the parties had a full and fair opportunity to litigate those issues in an earlier action." *Id*. at 716 (quotation marks and citation omitted). "A decision is final when all appeals have been exhausted or when the time available for an appeal has passed." *Id*. at 715-716

(quotation marks and citation omitted). In general, for collateral estoppel to apply, three elements must be satisfied: "(1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment; (2) the same parties must have had a full and fair opportunity to litigate the issue; and (3) there must be mutuality of estoppel." *Monat v State Farm Ins Co*, 469 Mich 679, 683-684; 677 NW2d 843 (2004) (quotation marks, citation, alteration, and footnote omitted). Mutuality of estopped exists "if the one taking advantage of the earlier adjudication would have been bound by it, had it gone against him." *Id.* (quotation marks and citation omitted).

In the prior action, the district court found that the Churchills' farming operation began no earlier than 2015. As a result, the 2014 GAAMPs applied. The property did not conform to the 2014 GAAMP on site selection, so the ordinance was not preempted by the RTFA. The issue of whether the RTFA defense applied and so preempted the local ordinance was, therefore, actually litigated in the prior action. Moreover, it resulted in a valid and final judgment given that the matter was fully litigated in the district court, was appealed to the circuit court, was remanded to the district court for additional findings, was again appealed to the circuit court, which affirmed the district court. Thereafter, both this Court and our Supreme Court denied leave to appeal. Next, the same parties had a full and fair opportunity to litigate the RTFA defense during the prior action. In the prior action, the parties were the Township and Paul Churchill. Annette and Paul, both of whom jointly own and operate their farming operation, are privies, as is explained above. Finally, there is mutuality of estoppel because, had the Township lost in the prior action, they would not be free to bring a second lawsuit again asserting that the Churchills were operating their farming operation in violation of the ordinance. In sum, on this record, the trial court did not err by determining the Churchills were precluded from relitigating the issue of whether the RTFA preempted the local ordinance.

Because the RTFA defense is precluded by collateral estoppel, there is no need to consider whether it is also precluded by res judicata.

## III. LATCHES

### A. STANDARD OF REVIEW

The Churchills contend that the trial court erred by determining that their doctrine of latches defense was foreclosed by the Supreme Court's opinion in *Twp of Fraser v Haney*, 509 Mich 18; 983 NW2d 309 (2022). A trial court's decision regarding the application of the doctrine of latches is reviewed de novo, but any factual findings supporting the court's decision are reviewed for clear error. *Papesh*, 267 Mich App at 108.

### B. ANALYSIS

As explained by this Court in *Yankee Springs Twp v Fox*, 264 Mich App 604, 611-612; 692 NW2d 728 (2004),

> The doctrine of laches is concerned with unreasonable delay that results in circumstances that would render inequitable any grant of relief to the dilatory plaintiff. The application of the doctrine of laches requires the passage of time

-6-

*combined with a change in condition* that would make it inequitable to enforce the claim against the defendant. Laches does not apply unless the delay of one party has resulted in prejudice to the other party. It is the effect, rather than the fact, of the passage of time that may trigger the defense of laches. The defendant has the burden of proving that the plaintiff's lack of due diligence resulted in some prejudice to the defendant. [Quotation marks and citations omitted; emphasis added).]

In this case, the Churchills cannot establish that the Township's delay in bringing the abatement action is unreasonable. In the proceedings below, the Churchills suggested that the delay as to *Annette* was unreasonable because the ordinance was amended in 2015 and the abatement action was not brought until September 2021. They complain that as a result, for half a decade, Annette was prejudiced by the delay because she made improvements to the property and increased the number of animals. However, the Township sought enforcement of the ordinance prior to September 2021. Specifically, in 2018, the Township sought compliance with the ordinance by bringing a code enforcement action in the district court. Although that action was brought solely against Paul, as explained above, Annette is in privity with him based upon their shared interest in the animals and farming operation. Litigation in the 2018 action was resolved in 2021. Thereafter, based upon the Churchills' continued failure to comply with the ordinance, the abatement action was initiated in September 2021. On these facts, there is no unreasonable delay in bringing the abatement action. Both Annette and Paul were aware that the ordinance precluded them from operating their farming operation in the manner that they desired. Their decision to continue to do so notwithstanding the ordinance's existence was not due to any delay by the Township, but rather upon their belief that the ordinance was preempted by the RTFA.

Although the Churchills were unable to establish their latches defense, the trial court's decision to foreclose it based upon *Haney* was misplaced. In *Haney*, the Supreme Court specifically addressed the statute of limitations defense, not a latches defense. *Haney*, 509 Mich at 20. The Court concluded that the statute of limitations did not bar the Township of Fraser's action because the harm at issue was one that "occurred every day on which defendants maintain hogs on their property." *Id*. at 21. In this case, there is a new harm each day that the Churchills maintain animals on their property in violation of the ordinance. However, because latches turns on whether there was prejudice caused by delay, the analysis in *Haney* is inapposite. Nevertheless, because the undisputed facts do not support a latches defense in this case, reversal and remand for further proceedings is not necessary. See *Gleason v Mich Dep't of Transp*, 256 Mich App 1, 3; 662 NW2d 822 (2003) ("A trial court's ruling may be upheld on appeal where the right result issued, albeit for the wrong reason.").

Affirmed. The Township may tax costs as the prevailing party. MCR 7.219(A).

/s/ Colleen A. O'Brien
/s/ Kirsten Frank Kelly
/s/ Michael J. Kelly