NATIONAL LABOR RELATIONS BOARD v.
POSTEX COTTON MILLS, Inc.

No. 12888.

United States Court of Appeals
Fifth Circuit.

May 5, 1950.

Ida Klaus, Solicitor, A. Norman Somers, Asst. Gen. Counsel, David P. Findling, Assoc. Gen. Counsel, National Labor Rela-

tions Board, Washington, D. C., for petitioner.

Joe S. Moss, Post, Tex., for respondent.

Alexander E. Wilson, Atlanta, Ga., Ireland Graves, Austin, Tex., for amici curiæ.

Before HOLMES, WALLER, and RUSSELL, Circuit Judges.

RUSSELL, Circuit Judge.

The respondent urges the point, presented by motion to dismiss before the trial examiner, and presented and reurged before the National Labor Relations Board and in this Court, that the Board was forbidden by the statute[1] to complain of the charge made by the Textile Workers Union of America, C. I. O., that respondent refused to bargain with it. The question, as well stated in the Board's brief is: "Whether the Board is authorized to issue a complaint upon a charge filed by an international [union] affiliated with the Congress of Industrial Organizations if the officers of the international have filed the non-communist affidavit provided for in section 9(h) of the Act, but the officers of the C. I. O. have not."

No question of the constitutionality of the statutory requirement is raised. We therefore do not consider Congressional power, but only the proper construction of the statutory language. There is no dispute between the parties as to Congressional purpose. It is conceded that the evil of Communist influence upon labor organizations was sought to be remedied by denying the benefits provided by the Act, and especially collective bargaining, to unions having

1. "No investigation shall be made by the Board of any question affecting commerce concerning the representation of employees, raised by a labor organization under subsection (c) of this section, no petition under subsection (e) (1) of this section shall be entertained, and no complaint shall be issued pursuant to a charge made by a labor organization under subsection (b) of section 160 of this title, unless there is on file with the Board an affidavit executed contemporaneously or within the preceding twelve-month period by each officer of such labor organization and the officers of any national or interna-

tional labor organization of which it is an affiliate or constituent unit that he is not a member of the Communist Party or affiliated with such party, and that he does not believe in, and is not a member of or supports any organization that believes in or teaches, the overthrow of the United States Government by force or by any illegal or unconstitutional methods. The provisions of sections 286, 287, 1001, 1022, and 1023 of Title 18 shall be applicable in respect to such affidavits." Sec. 9(h), Labor Management Relations Act, 61 Stat. 146, 29 U.S.C.A. § 159(h).

Communist officers. That Congress was properly concerned over the seriousness of industrial strife and disunity threatened and which would result from politically motivated strikes of Communist-led unions may not be doubted. In our efforts to give effect to Congressional purpose, we should not overlook what we consider the amply justified and validly sustained view of substantially the entire membership of the Congress (as is likewise true of all loyal Americans generally), that since Communist ideology has been shown so flagrantly incompatible with the principles of American democracy that both can not coexist in any one system of government, its destructive influence in all phases of government should properly be removed if lawful means be available.

The charge in the present case was made by the Textile Workers Union whose officers had filed the necessary affidavits. At the hearing it was stipulated, "that the Congress of Industrial Organization is a labor organization," and that its President had not filed the affidavit required by § 9(h), supra. It being established for the record, as is also a matter of general knowledge, that the Congress of Industrial Organizations is a labor organization, the question remaining to be settled, is whether it is likewise "any national or international labor organization" within the terms of the statute.

The Board contends that consideration of the well established meaning in labor relations parlance of the words "national or international labor organization" as not including the present federations, and of the autonomous, independent nature of the national and international unions, by which the parent organization is only a federation or alliance, with resultant lack of control by the federations over its affiliates, and that the federation does not generally directly bargain with employers, and of the legislative history of the Act, establishes that Congress did not intend to, nor bring the C. I. O. within the requirements of the noncommunist provision. It further contends that its construction of the statute fully effectuates the Congressional intent to prevent Communist-led unions from sub-

verting the statutory policy of encouraging collective bargaining, and the contrary construction tends to frustrate that purpose, since, as urged, if the failure of one officer of the C. I. O. to file the affidavit barred each of its affiliates or constituent units from invoking the jurisdiction of the Board there would be no incentive for such affiliate to purge its own ranks. The Board (with one member concurring for distinct reasons, and another dissenting) held, as to the American Federation of Labor, that it was not within the terms of the statute where the national union affiliated with it seeking relief, was in compliance. North Virginia Broadcasters, 75 N. L. R. B., 11. We recognize the Board's opportunity of familiarity with the usual meaning of terms employed in labor relations parlance, but we do not approve its construction of the provisions of the legislative enactment. We think the language of the statute, considered in the light of Congressional purpose, the evil to be remedied, and the means provided to effectuate that purpose, evidences Congressional intent to wholly eradicate and bar from leadership in the American labor movement, at each and every level, adherents to the Communist party and believers in the unconstitutional overthrow of our Government.

The force of the Board's argument that national and international unions are generally considered to have a status different from the parent organizations, sought to be supported by quotations from recognized authorities in the field of labor economics, is considerably weakened by the observation that these writers refer to the relationship of national and international *unions* to the American Federation of Labor or the Congress of Industrial Organizations, not to national or international *organizations,* as does the statute. Nor do we think the question of the relative strength or contrasting power of the union and the parent organization controlling. If the position of the union desiring the benefit of the Act is strong, it can with other affiliates exercise control over the parent; if weak, the parent can exercise control over it. Thus in either event, effectuation of the Congressional purpose to eradicate Communist leadership is

not thwarted, but promoted, in requiring compliance by each. But if extent of control be material, we are cited by the Board to instances where strong national and international unions withdrew from their parent organizations and presently function successfully independently of the federations. Congress was doubtless aware of these instances and may well have been of the opinion that in view of the desire of any federation to grow in members and power, the realities of the situation would require the parent to bring itself into compliance rather than lose its strong affiliates. It is said that the leaders of the two major organizations are determined to rid their organizations of Communist influences. We make no inquiry of and are not legally concerned with the purpose of the officers of the two major federations in declining to file the required affidavits. However, if the statute had been enforced as we here hold proper, and one had complied and another had not, we doubt not there would have resulted such acquisition of new affiliates by the complying organization as would have proven the validity of the means adopted by Congress to remove Communist influence from the American labor movement. Furthermore, without regard to relative power, the parents themselves in instances so numerous as to be substantial, directly charter and control local unions. Clearly Congress did not intend to require compliance in such instances where the parent organization bargained directly but not where it was indirectly engaged through the full support accorded an affiliated national or international union. The Board takes a contrary view, and as a result the parent is held sometimes subject and sometimes not, to the provisions of the statute. Compare North Virginia Broadcasters, supra, and American Optical Co., 81 N. L. R. B., 453. The statutory terms may not be properly defined upon the basis of the capacity in which the labor organization acts in a particular instance.

The Act contains its own definition of a "labor organization." Section 2(5), 29 U. S.C.A. § 152(5), provides: "The term 'labor organization' means any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work." To determine that the C. I. O. does not come within the terms of the statute would require us to overlook the realities and substance of its objectives and operations. It is a matter of general knowledge that the parent organization does frequently materially support its affiliates by financial aid and otherwise in their efforts of collective bargaining. The Constitution of the Congress of Industrial Organizations (Articles II and III) declares that:

"The objects of the organization are:

"First. To bring about the effective organization of the working men and women of America regardless of race, creed, color or nationality, and to unite them for common action into labor unions for their mutual aid and protection.

"Second. To extend the benefits of collective bargaining and to secure for the workers means to establish peaceful relations with the.. employers, by forming labor unions capable of dealing with modern aggregates of industry and finance.

"Third. To maintain determined adherence to obligations and responsibilities under collective bargaining and wage agreements."

*    *    *    *    *    *

"Section 1. The Organization shall be composed of Affiliated national and international unions, organizing committees, local industrial unions and industrial councils."

*    *    *    *    *    *

"Section 3. Certificates of affiliation shall be issued to local industrial unions by the Executive Board. The Executive Board shall issue rules governing the conduct, activities, affairs, and the suspension and expulsion of local industrial unions. * * *"

The Supreme Court in Congress of Industrial Organization v. McAdory, 1945, 325 U.S. 472, 475, 65 S.Ct. 1395, 1396, 89 L.Ed. 1741, stated that "Petitioners are the Con-

gress of *Industrial Organizations, a national labor organization,* and certain affiliated labor organizations * * *." (Emphasis supplied.) Another example of similar judicial reference is found in American Federation of Labor v. Watson, 1946, 327 U.S. 582, 586, 66 S.Ct. 761, 90 L.Ed. 873. See also, United States v. C. I. O., 335 U.S. 106, 68 S.Ct. 1349, 92 L.Ed. 1849, and Alabama State Federation of Labor v. McAdory, 325 U.S. 450, 65 S.Ct. 1384, 89 L.Ed. 1725.

The affidavit required by the provisions of § 9(h), supra, is referred to in common parlance generally as the "non-communist affidavit." But it should be observed that the statute is not so restricted. Beyond the "Communist party" provision, it extends to require further sworn statement, that the affiant "does not believe in, and is not a member or supports any organization that believes in or teaches, the overthrow of the United States Government by force or by any unconstitutional methods." Whether this provision might be also considered as a legislative construction of the beliefs of the members of the Communist party, is not pertinent here. The provision is pertinent though, as illustrative that § 9(h) evidences no novelty in expression of congressional intent to prevent any governmental department from being used directly or indirectly, to promote or sustain any organization or person who believes in the overthrow of the government of the United States by any unconstitutional means. For illustration, in the Act of June 28, 1941, making appropriations for the federal judiciary (together with other departments and branches therein specified) for the ensuing fiscal year (55 Stat. 265, 303, § 504), and in similar Acts for each year thereafter,[2] Congress prohibited the use of any of the funds appropriated "to pay the salary or wages of any person who advocates, or who is a member of an organization that

advocates, the overthrow of the Government of the United States by force or violence: Provided, That for the purposes hereof an affidavit shall be considered *prima facie* evidence that the person making the affidavit does not advocate, and is not a member of an organization that advocates, the overthrow of the Government of the United States by force or violence.[3]" It is made a felony for any person within the prohibited classes to accept employment compensated from the appropriated funds. It is true that in application the similar provisions of the two Acts are not precisely analogous. One relates to those who are a part of the Government, and withholds the purse from those the statute defines. The other imposes a restriction upon an agency provided and maintained by the government, and directs that the benefits provided by the Act shall be withheld from those who do not comply. This difference in the status of those subject to and affected by the operation of the two enactments does not make inapt a comparison of the statutes since both clearly express the legislative purpose—indeed plain common sense—that the United States of America will not knowingly aid or nurture those pledged to its destruction.

Under the proper construction of the congressional language, the Congress of Industrial Organizations is a national labor organization within the terms of § 9(h) of the Labor Management Relations Act, supra. It was stipulated in the hearing of this case that the requirement of the statute as we adjudge it, had not been met. The Board was therefore not empowered to issue the complaint against the respondent, and accordingly, there is no legal basis upon which to predicate the order now sought to be enforced. The order of the Board is therefore invalid, it may not be enforced, and should be set aside. It is so ordered.

2. 56 Stat. 468, 506, § 504; 57 Stat. 220, 244, § 302; 58 Stat. 334, 358, § 301; 59 Stat. 169, 201, § 601; 60 Stat. 446, 480, § 501; 61 Stat. 279, 306, § 501; 62 Stat. 305, 333, § 501.

3. It is a matter of common knowledge that in order to comply with the statutes the

disbursing officers of the government sought the affidavits provided by the Act from each official and employee of the departments. We know that they were executed by District and Circuit Judges and it is a fair assumption by the Chief Justice and Justices of the Supreme Court as well.