## NATIONAL LABOR RELATIONS BOARD *v.* DANT ET AL., DOING BUSINESS AS DANT & RUSSELL, LTD.

No. 97. Argued December 15, 1952.—Decided February 2, 1953.

*David P. Findling* argued the cause for petitioner. With him on the brief were *Acting Solicitor General Stern, George J. Bott* and *Mozart G. Ratner.*

*John T. Casey* argued the cause for respondents. With him on the brief were *R. S. Smethurst* and *R. S. Haslam.*

*Arthur J. Goldberg* and *Thomas E. Harris* filed a brief for the Congress of Industrial Organizations, as *amicus curiae,* urging reversal.

An *amici curiae* brief urging affirmance was filed by *Rufus G. Poole* for the Shell Chemical Corporation, *Frank A. Constangy* for the American Thread Company,

*J. Adrian Rosenburg* for Jack Smith Beverages, Inc., *Edward F. Conlin* for Edwards Brothers, Inc., and *Alexander E. Wilson, Jr.* and *G. Maynard Smith* for the I. B. S. Manufacturing Company.

MR. JUSTICE REED delivered the opinion of the Court.

The National Labor Relations Board issued a complaint on March 27, 1950, following a charge filed August 3, 1949, by the International Woodworkers of America, Local 6–7, against respondent, Dant & Russell, Ltd. The charge was filed in accordance with the procedure of the Act, § 10 (b), and was based on violations of § 8 (a)(1) and (3).[1] After the usual proceedings, the Board ordered respondent to take appropriate remedial action to correct the charged unfair labor practices. The International Woodworkers Union was and is an affiliate of the Congress of Industrial Organizations. There were on file with the Board at the time the charge was made the non-Communist affidavits executed by the officers of the local union as required by § 9 (h) of the National Labor Relations Act, as amended by the Labor Management Relations Act, 1947, § 101. Affidavits executed by

---

[1] National Labor Relations Act, as amended by the Labor Management Relations Act, 1947, 29 U. S. C. § 158:

"(a) It shall be an unfair labor practice for an employer—

"(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;

.        .        .        .        .

"(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: *Provided, . . . .*"

29 U. S. C. § 160:

"(b) Whenever it is charged that any person has engaged in or is engaging in any such unfair labor practice, the Board . . . shall have power to issue and cause to be served upon such person a complaint stating the charges in that respect, and containing a notice of hearing before the Board . . . ."

the officers of the C. I. O. were filed with the Board prior to the issuance of the complaint but subsequent to the filing of the charge.

Section 9 (h) of the Act provided, at the time of the filing of the charge and the issuance of the complaint, that

"No investigation shall be made by the Board of any question affecting commerce concerning the representation of employees, raised by a labor organization under subsection (c) of this section, no petition under section 9 (e)(1) shall be entertained, and no complaint shall be issued pursuant to a charge made by a labor organization under subsection (b) of section 10, unless there is on file with the Board an affidavit executed . . . by each officer of such labor organization and the officers of any national or international labor organization of which it is an affiliate . . . that he is not a member of the Communist Party . . . ." [2]

Respondent challenged the order on the ground that the Board could not issue a valid complaint based on a charge by a union if the charging union was not in compliance with § 9 (h) when the charge was filed in spite of the fact that at the time the complaint was issued, the union was in full compliance. In response to this challenge, the Board held that § 9 (h) required compliance "at the time of the issuance of the complaint, rather than at the time of the filing of the charge." On petition for enforcement, the Court of Appeals for the Ninth Circuit set aside the order on the single ground that, under § 9 (h), "the Board was not empowered to entertain the

---

[2] Section 9 (h) of the National Labor Relations Act, as amended by the Labor Management Relations Act, 1947, 61 Stat. 146, 29 U. S. C. (Supp. III) § 159 (h).

The clause "no petition under section 9 (e)(1) shall be entertained" was deleted by Act of October 22, 1951, 65 Stat. 601.

charge or to issue the complaint or the order." [3] This followed, according to the court, because our decision in *Labor Board* v. *Highland Park Mfg. Co.*, 341 U. S. 322, had construed § 9 (h) as prohibiting the issuance of any complaint by the Board unless the charging labor organization was in full compliance at the time its charge was filed.

We do not think the *Highland Park* opinion supports the Court of Appeals opinion in the present case. That former opinion, dealing with a charge that the employer violated § 8 (a)(5) by refusing to bargain with the bargaining agent of the employees, § 9 (a),[4] held only that the C. I. O. was a "national or international labor organization" within the meaning of § 9 (h). For that reason the C. I. O. was required to file non-Communist affidavits as a prerequisite to the achievement of full compliance status by its affiliates. There, the C. I. O.'s compliance with § 9 (h) occurred almost a year after the complaint had issued. Since compliance subsequent to the issuance of the complaint also occurred in the other decisions relied on by the court below, language in them concerning the institution of proceedings was not directed at charges under § 8 (a)(3) and therefore there was no occasion for those courts to analyze § 9 (h) to determine its applicability to the present situation.[5]

---

[3] 195 F. 2d 299, 300. The Courts of Appeals for the Third and Fifth Circuits have taken similar positions where the affidavits were filed prior to the issuance of the complaints in *Labor Board* v. *Nina Dye Works Co., Inc.*, 198 F. 2d 362; and *Labor Board* v. *American Thread Co.*, 198 F. 2d 137, respectively. Each of these cases agreed with the analysis and conclusion of the Court of Appeals for the Ninth Circuit in the present case. See judgment of this Court reversing these decisions entered today, *post,* p. 924.

[4] 84 N. L. R. B. 744, 745.

[5] *Labor Board* v. *Postex Cotton Mills*, 181 F. 2d 919; *Labor Board* v. *J. I. Case Co.*, 189 F. 2d 599; *Labor Board* v. *Clark Shoe Co.*, 189 F. 2d 731.

In respondent's view, and in the view of the Courts of Appeals that have considered this issue, § 9 (h) precludes noncomplying unions from filing "valid" charges, and prohibits the Board from taking any action on a charge filed by a noncomplying union. We do not agree. Section 9 (h) prohibited the Board from doing three things. It specifically stated that "unless" the prerequisite affidavits had been filed, the Board shall not (1) make an "investigation" as authorized by § 9 (c) concerning the representation of employees; (2) entertain a "petition under section 9 (e)(1)," as it then stood; or (3) issue a "complaint . . . pursuant to a charge made by a labor organization under subsection (b) of section 10." It does not by its terms preclude either the filing of a charge by a noncomplying labor organization or the entertainment of the charge by the Board.

The "unless" clause limits the issuance of a "complaint." It has no specific reference to the phrase "pursuant to a charge made by a labor organization." If Congress had intended to enact such a requirement for the filing of the charge, it would have been a simple matter to have stated that "no charge shall be entertained." [6] We think the purpose of the "pursuant" phrase is to make it clear that the "unless" limitation on the issuance of complaints is restricted to charges filed by such labor organizations and does not apply to charges filed by individuals, or by employers against such organizations. The phrase so construed follows the pattern of the first phrase in § 9 (h) which applies to proceedings by employees for collective bargaining representation "raised by a labor organization under subsection (c) of this section." That there is no such qualifying clause in § 9 (h) for the union-shop election clause provision of § 9 (e)(1), as it then

[6] See S. 655, 83d Cong., 1st Sess., introduced by Senator Taft to amend § 9 (h) by forbidding entertainment by the Board of a charge under § 10 (b) unless the required affidavits are filed.

read, is in accord with this construction, for all petitions for such an election would then have been filed on behalf of a union.

The requirements for non-Communist affidavits in § 9 (h) make it unlawful for the Board to investigate a petition by a labor organization under § 9 (c) for collective bargaining representation. Likewise the absence of such affidavits kept the Board from entertaining a petition for a union-shop election under § 9 (e)(1). The careful specification in § 9 (h) that these affidavits must be filed before investigation, entertainment or complaint shows that § 9 (h) was not directed at the filing of a charge. Such particularity distinguishes between charge and complaint.

This has been the position of the Board from the enactment of the Labor Management Relations Act. Section 102.13 (b)(2) of the Board's Rules and Regulations, effective August 18, 1948, defines compliance with § 9 (h) of the Act in terms of requiring the affidavits to be "executed contemporaneously with the charge (or petition)." [7]

---

[7] 29 CFR § 102.13:

"(b) For the purpose of the regulations in this part, compliance with section 9 (h) of the act means in the case of a national or international labor organization, that it has filed with the general counsel in Washington, D. C., and in the case of a local labor organization, that any national or international labor organization of which it is an affiliate or constituent body has filed with the general counsel in Washington, D. C., and that the labor organization has filed with the regional director in the region in which the proceeding is pending:

.        .        .        .        .

"(2) An affidavit by each officer referred to in subparagraph (1) of this paragraph, executed contemporaneously with the charge (or petition) or within the preceding 12-month period, stating that he is not a member of the Communist Party or affiliated with such party, and that he does not believe in, and is not a member of or supports any organization that believes in or teaches, the overthrow of the United States Government by force or by any illegal or unconstitutional methods."

This, however, is a direction as to what should be done and is not an interpretation by the Board of the requirement of § 9 (h). According to § 102.13 (b), the definition of compliance is set down, "For the purpose of the regulations in this part." The Board had made it clear in § 101.3 of these Rules that there is a 10-day period of grace given to charging unions to achieve compliance status.[8] The Board states it has followed a practice of extending this period upon a proper showing that the union is making a diligent effort to comply.[9] An interpretation that the Act permits the filing of a charge prior to compliance with § 9 (h) is the same as that made by

---

[8] 29 CFR § 101.3:

"(b) In addition, the labor organization and every national or international labor organization of which it is an affiliate or constituent unit must have complied with section 9 (h) of the act as follows: At the time of filing the charge (or petition) or prior thereto, or within a reasonable period not to exceed 10 days thereafter, the national or international labor organization shall have on file with the general counsel in Washington, D. C., and the local labor organization shall have on file with the regional director in the region in which the proceeding is pending, or in which it customarily files cases, a declaration by an authorized agent executed contemporaneously or within the preceding 12-month period listing the titles of all offices of the filing organization and stating the names of the incumbents, if any, in each such office and the date of expiration of each incumbent's term, and an affidavit from each such officer, executed contemporaneously or within the preceding 12-month period, stating that he is not a member of the Communist Party or affiliated with such party and that he does not believe in, and is not a member of nor supports any organization that believes in or teaches the overthrow of the United States Government by force or by any illegal or unconstitutional methods."

[9] Respondent asserts that this practice, which was followed by the Board in this case, contravenes § 3 of the Administrative Procedure Act. That section requires every agency to publish in the Federal Register "statements of the general course and method by which its functions are channeled and determined, including the nature and requirement of all formal or informal procedures available," and

the Board in an opinion as early as December 16, 1948, *In the Matter of Southern Fruit Distributors,* 80 N. L. R. B. 1283. That opinion was handed down by the Board before our ruling in the *Highland Park* case and the position has been maintained, though the Board failed to set out fully in its opinions the reason for its conclusion.[10]

Respondent urges that the above construction of § 9 (h) weakens the over-all purpose of the section in that it allows the Board to provide noncomplying labor organizations with substantial benefits by the filing of the charge without any assurance of compliance.

Phrased differently, the argument is that the benefits of the Act may not flow to a labor organization unless the non-Communist affidavits are on file. We agree with the argument, and believe that it is in accord with our interpretation of § 9 (h). Since the remedial processes of the Act to cure practices forbidden by § 8 (a)(3) can only be invoked by the issuance of a complaint, we do not see how a noncomplying labor organization can be said to benefit from the fact that it need not be in compliance at the date of the filing of the charge. The filing of a charge, which is subject to dismissal within 10 days under the Board's rule, unless reasonable assurance is given by the filing union that it will comply with the affidavit requirement,[11] is of no benefit to the charging union unless it is followed by the issuance of a complaint.

---

provides that "[n]o person shall in any manner be required to resort to organization or procedure not so published." 5 U. S. C. § 1002 (a). The Board's practice of extending the 10-day period on a proper showing by the labor organization can hardly be called a procedure to which respondent was required to resort.

[10] *In the Matter of H & H Manufacturing Co., Inc.,* 87 N. L. R. B. 1373. Compare a contrary position taken by the Third Circuit in *Labor Board* v. *Nina Dye Works Co., Inc.,* 198 F. 2d 362.

[11] N. L. R. B. Rules and Regulations and Statement of Procedure, 29 CFR §§ 101.3 and 102.13.

Absent the issuance of a complaint, the filing of a charge is a useless act.

Another factor militating against the construction of the Act adopted below arises out of the fluid and elective nature of the official personnel of labor unions. As a practical matter, elections of new officers, changes in organizational structures, difficulties and delays in auditing financial statements or in obtaining information with respect to the numerous details which § 9 (f) and (g) requires, make compliance at a given moment, or continuous compliance, a matter of happenstance. Under § 9 (f) and (g) the filing of union financial and organizational reports is also a condition precedent to the issuance of complaints under subsection (b) of § 10 of the Act. It would seem that the construction of § 9 (h) urged by respondent would lead to a like construction of § 9 (f) and (g).[12] Such normal noncompliance at the time of filing a charge should not work to frustrate the

---

[12] 29 U. S. C. § 159:

"(f) . . . No investigation shall be made by the Board of any question affecting commerce concerning the representation of employees, raised by a labor organization under subsection (c) of this section, and no complaint shall be issued pursuant to a charge made by a labor organization under subsection (b), of section 160 of this title, unless such labor organization and any national or international labor organization of which such labor organization is an affiliate or constituent unit (A) shall have prior thereto filed with the Secretary of Labor copies of its constitution and bylaws and a report, in such form as the Secretary may prescribe, showing— . . . .

"(g) . . . It shall be the obligation of all labor organizations to file annually with the Secretary of Labor, in such form as the Secretary of Labor may prescribe, reports bringing up to date the information required to be supplied in the initial filing by subsection (f)(A) of this section, and to file with the Secretary of Labor and furnish to its members annually financial reports in the form and manner prescribed in subsection (f)(B) of this section. No labor organization shall be eligible for certification under this section as the representative of any employees, and no complaint shall issue under section

Act's purpose of remedying unfair labor practices committed against unions which do have leadership willing to comply.

Finally, respondent makes the argument that its position is supported by the legislative history of § 9 (h).[13] But in the face of the specific words of the statute, the

160 of this title with respect to a charge filed by a labor organization unless it can show that it and any national or international labor organization of which it is an affiliate or constituent unit has complied with its obligation under this subsection."

[13] The House Conference Report No. 510, 80th Cong., 1st Sess., p. 46, speaks of the filing of the required data as a condition to the labor organization's receiving "benefits under the act." To the same effect see the analysis of the Act at 93 Cong. Rec. 6534. Senator Taft, in analyzing the differences between the Senate bill and the Conference Report, stated: "Subsection 9 (h) of the conference agreement embodies the principle . . . which would have prevented a labor organization from being eligible for certification if any of its . . . officers were members or affiliates of the Communist Party . . . . There was a similar provision in the House bill . . . . In reconciling the two provisions the conferees took into account the fact that representation proceedings might be indefinitely delayed if the Board was required to investigate the character of all the local and national officers as well as the character of the officers of the parent body or federation. The conference agreement provides that no certification shall be made or any complaint issued unless the labor organization in question submits affidavits executed by each of its officers . . . to the effect that they are not members or affiliates" of organizations accepting the doctrine of violence in government. 93 Cong. Rec. 6444.

Referring to subsections 9 (f) and (g), containing provisions regarding financial reports, similar to those of § 9 (h), Senator Taft stated that "[t]he filing of such report is a condition of certification as bargaining agent under the law, and is also a condition of the right to file any charges under the . . . Act." 93 Cong. Rec. 3839. Congressman Hartley's remarks were that the section "prohibits labor organizations from invoking the processes of the act unless all of the officers file affidavits with the board that they are not members of the Communist Party . . . ." 93 Cong. Rec. 6383. In the House Conf. Rep. No. 510, 80th Cong., 1st Sess., pp. 51–52, it was stated

legislative history does not persuade us. It contains no discussion of the necessity of filing § 9 (h) affidavits before filing the charge. The purpose of § 9 (h) was to stop the use of the Labor Board by union leaders unwilling to be limited in government by the processes of reason. That purpose was sought through the elimination of such leaders rather than by making difficult the union's compliance with the Act. The legislative comments are to be read in that light. Indeed those comments are so lacking in definitiveness on the point here at issue that both parties suggest that § 9 (h) itself best shows the purpose of Congress.

We hold that the sought-for congressional intent is found in the language of the Act; and as we have found it, the decision below must be reversed.

*Reversed.*

---

that the bill which was enacted made several changes with respect to § 9 (f) and (g). *"First,* the filing of the information and reports is made a condition . . . to eligibility for filing petitions for representation and eligibility for making changes." To the same effect see also the subsequent statement of Congressman Hartley, in his book, "Our New National Labor Policy," at pp. 162–163.