**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**LANNOM MANUFACTURING COMPANY, Respondent.**

**No. 12328.**

United States Court of Appeals
Sixth Circuit.

Oct. 6, 1955.

Stewart, Circuit Judge, dissented.

Norton J. Come, Washington, D. C., argued George J. Bott, David P. Findling, Marcel Mallet-Prevost, Franklin Milliken, Washington, D. C., on brief, for N.L.R.B.

Judson Harwood, Nashville, Tenn., for Lannom Mfg. Co.

Harold I. Cammer, New York City, for intervenor, International Fur & Leather Workers Union.

Before SIMONS, Chief Judge, and MILLER and STEWART, Circuit Judges.

MILLER, Circuit Judge.

The National Labor Relations Board has filed a petition seeking enforcement of its unfair labor practice order heretofore issued against the respondent, Lannom Manufacturing Company. The respondent employer has moved to dismiss the petition. The case is before us on the motion only, not on the merits.

In support of its motion, the respondent alleges that the charging union, International Fur and Leather Workers' Union, at the time the Board issued the complaint and continuously thereafter, was not in compliance with Sec. 159(h), Title 29, U.S.C.A., which requires the filing of non-Communist affidavits, because Ben Gold, its president, was at all times material affiliated with the Communist Party, that his affidavit to the contrary was false, and that he had been convicted of perjury for having filed such false affidavit with the Board.

The Board was advised after filing its petition for enforcement that respondent intended to challenge the compliance status of the charging union, and in order to have the pertinent facts before the Court, filed a supplemental petition for enforcement, to which the motion to dismiss was subsequently directed, setting out the following facts, about which there is no dispute.

The original charge instituting the proceeding in this case was filed by the International Fur and Leather Workers' Union on April 18, 1951. The complaint issued February 27, 1952.

Beginning in August 1950 and annually thereafter the Union filed non-Communist affidavits executed by its officers pursuant to Section 9(h) of the Act, Sec. 159(h), Title 29, U.S.C.A. These included annual affidavits of Ben Gold, president of the Union. The first Gold affidavit, dated August 29, 1950, was filed on or about August 30, 1950. In reliance on these affidavits the Board deemed the Union to be in compliance with Section 9(h) for the period following August 30, 1950, and including February 27, 1952, the date of the complaint.

On or about August 28, 1953, an indictment under Sec. 1001, Title 18, U. S. Code was returned against Gold in the District Court for the District of Columbia charging that the non-Communist affidavit which he had filed with the Board on August 30, 1950 was false. On April 30, 1954, this criminal proceeding culminated in his conviction. An appeal is now pending in the Court of Appeals.

Considerable litigation in the District of Columbia has arisen out of the foregoing situation, briefly summarized as follows:

On December 19, 1952, the Board called on Gold and certain officers of other unions for a reaffirmation of their affidavits previously filed in 1949 through 1952. This was prompted by a presentment handed up by a grand jury in the U. S. District Court for the Southern District of New York, which reported that a number of officers of unions had appeared before the grand jury, and while identifying the affidavits filed by them with the Board, had pleaded their constitutional privilege with respect to the truth or falsity of such affidavits. The unions brought suit in the District Court to enjoin the Board from conducting such an inquiry on the ground that it was beyond the Board's authority under the Act. The District Court upheld this contention and on January 27, 1953 issued the injunction. United Electrical, Radio & Mach. Workers of America v. Herzog, D.C., 110 F.Supp. 220. The Court of Appeals affirmed. Farmer v. United Electrical, Radio & Mach. Workers of America, 93 U.S.App.D.C. 178, 211 F.2d 36, certiorari denied 347 U.S. 943, 74 S.Ct. 638, 98 L.Ed. 1091.

Following the return of the indictment on August 28, 1953, the Board on

October 23, 1953 promulgated a Statement of Policy with respect to representation proceedings involving unions which had officers under indictment for false non-Communist affidavits. The Statement of Policy provided for the withholding of certification of the union as bargaining representative pending the outcome of the indictment. Pursuant to the Statement of Policy the Board refused to process representation petitions of the International Fur and Leather Workers Union. The Union sought an injunction against the enforcement of the Statement of Policy and the District Court on November 19, 1953 issued a preliminary injunction to that effect. International Fur & Leather Workers Union of U. S. and Canada v. Farmer, D.C., 117 F.Supp. 35. A stay pending appeal was denied by the Court of Appeals on December 4, 1953, which also on July 2, 1954 dismissed the appeal as moot because of the intervening conviction of Gold and the filing of another action, referred to below, based on the conviction of Gold instead of the indictment.

Following Gold's conviction on April 30, 1954, after which he was reelected as President of the Union, and following a show-cause order, the Board on May 28, 1954 issued a Determination and Order declaring its compliance letter to the Union on June 11, 1953 to be of no force and effect, that the Union was not in compliance, and that Gold's affidavit of May 11, 1954 submitted for a further twelve months compliance period be rejected "in the interests of protecting the integrity of the Board's processes and of effectuating the policies and purposes of Section 9 (h) of the Act." The Union thereupon sought and on July 23, 1954 obtained from the District Court a preliminary injunction enjoining the Board from "Revoking, suspending or restricting the compliance status" of the Union and "Taking or refusing to take any action" by reason of Gold's conviction for having filed the false affidavit. Case unreported. On September 9, 1954 the Court of Appeals denied a stay pending appeal, and on February 15, 1955 affirmed the judgment of the District Court. Farmer v. International Fur & Leather Workers Union, D.C.Cir., 221 F. 2d 862.

In the foregoing litigation the Court of Appeals for the District of Columbia has taken the position that the function of the Board with respect to the affidavits required by the Act are administrative only, with no authority to inquire as to the truth or falsity of the affidavits; that the Board has no authority under the Act to deprive the Union of its compliance status under Sec. 9(h) if the affidavits have been filed; that the Act imposes a criminal penalty for filing a false affidavit which in the opinion of Congress was a sufficient deterrent to false swearing by union officers; and that there is nothing in the Act or in its legislative history to indicate that Congress meant to go further and impose the drastic penalty of excluding a union from the Act's benefits because one of its officers filed a false affidavit, even though the membership of the union was aware of its falsity. See also: Aerovox Corp. v. N. L. R. B., 93 U.S.App.D.C. 350, 211 F.2d 640.

As indicated by the foregoing recital of the actions of the Board, the Board does not agree with this construction of the Act. However, in view of the injunction issued against it it felt compelled to file the present enforcement proceeding. It has filed a Memorandum giving the Court the benefit of its view that this Court is empowered in this proceeding to decide that Gold's conviction invalidates the validity of the complaint. The International Fur and Leather Workers Union was granted leave to intervene and has filed a brief in opposition to the motion to dismiss.

We have heretofore indicated disagreement with the construction given to the Act by the foregoing cases. N. L. R. B. v. Sharples Chemicals, Inc., 6 Cir., 209 F.2d 645, 650; N. L. R. B. v. Wiltse, 6 Cir., 188 F.2d 917. We held in those cases that a factual issue of compliance could not be raised and litigated by a

respondent in an unfair labor practice proceeding, but expressed the view that authority to determine compliance or non-compliance on the part of the charging union existed in the Board and that such determination could be made by it through separate administrative proceedings. Reference was made in the Sharples case to the elaborate administrative structure established and used by the Board following the enactment of the Labor-Management Relations Act of 1947 for the purpose of determining prior to the issuance of a complaint that the charging union was in compliance; see also: N. L. R. B. v. Greensboro Coca Cola Bottling Co., 4 Cir., 180 F.2d 840, note 1, at page 844; Law v. N. L. R. B., 10 Cir., 192 F.2d 236, 238; and to the recognition and apparent approval by the Supreme Court of such administrative proceedings. N. L. R. B. v. Highland Park Mfg. Co., 341 U.S. 322, at page 325, 71 S.Ct. 758, 95 L.Ed. 969. The views expressed in N. L. R. B. v. Sharples, supra, have since received approval in American Rubber Products Corp. v. N. L. R. B., 7 Cir., 214 F.2d 47, 55, and N. L. R. B. v. Vulcan Furniture Mfg. Corp., 5 Cir., 214 F.2d 369, 371, certiorari denied 348 U.S. 873, 75 S.Ct. 109. For the reasons stated in N. L. R. B. v. Sharples Chemicals, Inc., supra, and N. L. R. B. v. Vulcan Furniture Mfg. Corp., supra, we adhere to the view heretofore expressed by us.

■ Where compliance involves a question of law arising out of established or undisputed facts, it appears settled that the Court in an enforcement proceeding has the authority to determine if the charging union is in compliance. N. L. R. B. v. Highland Park Mfg. Co., supra, 341 U.S. at pages 325–326, 71 S. Ct. at pages 760–761. In that case the Supreme Court held that the Court of Appeals was right in overruling the Board and determining upon undisputed facts that the Board could not entertain the complaint, saying [341 U.S. 322, 71 S.Ct. 761]: "We think * * * that an issue of law of this kind, which goes to the heart of the validity of the proceedings on which the order is based, is open to inquiry by the courts when they are asked to lend their enforcement powers to an administrative tribunal."

In N. L. R. B. v. Dant, 344 U.S. 375, 73 S.Ct. 375, 97 L.Ed. 407, the legal effect of affidavits filed by union officers was successfully challenged in an enforcement proceeding in the Court of Appeals. Although the Supreme Court reversed the case on its merits, no question was raised about the authority of the Court to determine non-compliance where a factual question was not involved. Prior to these rulings by the Supreme Court, the Court of Appeals for the Fifth Circuit had indicated, without deciding, that if it was made to appear to it by clear and positive proof that the Board has taken jurisdiction of a charge by a union which has not complied with Sec. 9(h) of the Act, it would not enforce the Board's order. N. L. R. B. v. Red Rock Co., 5 Cir., 187 F.2d 76, 78, certiorari denied 341 U.S. 950, 71 S.Ct. 1017, 95 L.Ed. 1373.

■ In the present case, as the record now stands, there is no factual issue about the falsity of Gold's 1950 affidavit. A jury has so found. We see no reason why this Court can not, as a matter of law, give to that conviction the proper legal effect which should follow from it. As stated in N. L. R. B. v. Vulcan Furniture Mfg. Corp., supra, what purports to be an affidavit is now merely a piece of paper evidencing false swearing. Certainly this Court is not required to blindly accept the form and ignore the realities. Irrespective of a possible lack of statutory authority in the Board, which is an administrative agency created by a statute and deriving its authority from that statute, to investigate the truth or falsity of affidavits filed with it, it would seem to be a fundamental principle that a court whose jurisdiction is invoked by a petitioner can consider the legal effect of undisputed facts placed before it in the record in determining whether the petitioner is entitled to the relief sought. There is no doubt but that the legal effect of non-

compliance with Sec. 9(h) of the Act is a bar to enforcement proceedings in the Courts. N. L. R. B. v. Highland Park Mfg. Co., supra; N. L. R. B. v. Dant, 344 U. S. 375, 73 S.Ct. 375; N. L. R. B. v. Sharples Chemicals, Inc., supra, 6 Cir., 209 F.2d at page 650. "It would be strange indeed if the courts were compelled to enforce without inquiry an order which could only result from proceedings that, under the admitted facts, the Board was forbidden to conduct." N. L. R. B. v. Highland Park Mfg. Co., supra, 341 U.S. at page 325, 71 S.Ct. at page 760. Such authority in the court effectuates rather than obstructs the plain congressional purpose to " 'wholly eradicate and bar from leadership in the American labor movement, at each and every level, adherents to the Communist party and believers in the unconstitutional overthrow of our Government.' " N. L. R. B. v. Highland Park Mfg. Co., supra, 341 U. S. at page 325, 71 S.Ct. at page 760. Nor does it conflict with the congressional purpose, referred to by us in N. L. R. B. v. Wiltse, supra and N. L. R. B. v. Sharples Chemicals, Inc., supra, of confining the evidence in unfair labor practice proceedings to the merits of the case in order to avoid delays resulting from the trial of collateral issues and to enable the Board to carry out its real function of deciding unfair labor practice cases and determining bargaining representatives. No trial of such a collateral issue is here involved. In our opinion, as a matter of law, the 1950 affidavit of Gold and his subsequent conviction affirmatively show on the present record in this case a lack of compliance on the part of the charging union on August 30, 1950 and for such time thereafter as such conditions continued to exist.

■ The Union contends that since the present complaint was issued on February 27, 1952, compliance is not based on the August 30, 1950 affidavit, but on the affidavit of Gold filed a year later, approximately in August, 1951, and that there is no showing that the August 1951 affidavit is false. We find little merit in this contention, technical at its best. Compliance or non-compliance is based on whether Gold was a member of the Communist Party on February 27, 1952. It is an established fact that he was a member of the Communist Party on August 30, 1950. The nature and fundamental characteristics of the Communist Party have received considerable judicial consideration. In his separate opinion in American Communications Association, C. I. O. v. Douds, 339 U. S. 382, at page 432, 70 S.Ct. 674 at page 700, 94 L.Ed. 925, Justice Jackson pointed out the differences between the Communist Party and the major political parties in the United States, that membership in it is totally different from membership in the usual political party, and that *inferences from membership in such an organization are justifiably different from those to be drawn from membership in the usual type of political party.* He wrote: "The Party is a secret conclave. Members are admitted only upon acceptance as reliable and after indoctrination in its policies, to which the member is fully committed. They are provided with cards or credentials, usually issued under false names so that the identification can only be made by officers of the Party who hold the code. Moreover, each pledges unconditional obedience to party authority. * * * For any deviation from the party line they are purged and excluded." See also similar expressions of views by Chief Justice Vinson, Justice Frankfurter and Justice Jackson in Dennis v. United States, 341 U.S. 494, at pages 498, 547 and 564, 71 S.Ct. at pages 861, 886 and 894 respectively. Chief Judge Simons of this Court has previously had occasion to call attention to these same characteristics. Albertson v. Millard, D.C. E.D.Mich., 106 F.Supp. 635, 643. In the absence of a showing to the contrary, the reasonable presumption would be a continuing membership in such an organization rather than a withdrawal from the membership ranks. Considering the falsity of the 1950 affidavit and the nature of the Communist Party, we do not

regard the renewal affidavit in 1951, unsupported by any alleged change in the factual situation, as a sufficient showing to the contrary. In Hupman v. United States, 6 Cir., 219 F.2d 243, 248, we recognized the probability and possibility of a change of allegiance or affiliation on the part of a member of the Party, particularly if the proof of status is confined to a time remote from the date of the offense charged, but rejected the contention that membership in the Communist Party on a certain day could be proved only by evidence of what happened or transpired on that particular day.

It also appears that the Board, by its Determination and Order of May 28, 1954 found that the Union was not at that time in compliance with Sec. 9(h) of the Act. Although the District Court enjoined the Board from revoking the compliance status of the Union by reason of such finding, the injunction does not run against the respondent herein, who was not a party to that action, and does not render the present proceeding *res judicata*. Postal Telegraph Cable Co. v. City of Newport, 247 U.S. 464, 476, 38 S.Ct. 566, 62 L.Ed. 1215; Swetland v. Curry, 6 Cir., 188 F.2d 841, 843. Nor do we believe that it prevents the respondent from taking the position in this Court that such a finding was made by the Board and urging upon us that we give to it the legal effect which in our opinion results therefrom, although respectfully differing from the legal conclusions reached in another circuit.

This case is complicated by the fact that an appeal on the part of Gold is pending in the Court of Appeals for the District of Columbia from the judgment of the District Court. It is indefinite when that litigation will end, considering the possibility of further proceedings in the Supreme Court in the event of affirmance, and the possibility of a new trial in the event of a reversal. We realize that the ultimate termination of the criminal proceedings in the District of Columbia may present a different factual situation from what is now before us, but consider it inadvisable to "freeze" this proceeding for an unreasonable length of time awaiting such termination, which would in the meantime prevent a possible review by the Supreme Court if so desired by one of the parties. We are accordingly ruling on the motion on the basis of the record as it presently stands.

Respondent's motion to dismiss the petition for enforcement is sustained.

STEWART, Circuit Judge (dissenting).

A court of competent jurisdiction has found that Gold's affidavit of August 30, 1950, was false. The critical date as to compliance with § 9(h) of the National Labor Relations Act as amended was the date of issuance of the Board's complaint. N. L. R. B. v. Dant, 344 U.S. 375, 73 S.Ct. 375, 97 L.Ed. 407. If the complaint had issued during the twelve month period while this false affidavit was in effect, the question before us would be clear cut. That, however, is not the case.

In August of 1951 Gold filed a new non-Communist affidavit, and it was during the effective period of that affidavit that the complaint in this case issued. No .court has found that affidavit to be false. It is true that the Board found in 1954 that the Union was not at that time in compliance with § 9(h). Assuming the Board had power to make such a finding, and assuming further that it be considered a finding that the 1951 affidavit was false, it must, I should think, be supported, like any Board finding, by substantial evidence, considering the record as a whole. We have no such record before us. Indeed, it appears that the question of the truth or falsity of the 1951 affidavit has never been heard on the merits.[1]

In American Communications Ass'n, C. I. O. v. Douds, 339 U.S. 382, 414, 70 S.Ct. 674, 692, 94 L.Ed. 925, the opinion in chief, rejecting the claim that § 9(h) was a bill of attainder, emphasized that

---

1. The Board has in effect been enjoined from holding such a hearing.

"members of those groups identified in § 9(h) are free to serve as union officers if at any time they renounce the allegiances which constituted a bar to signing the affidavit in the past. Past conduct, actual or threatened by their previous adherence to affiliations and beliefs mentioned in § 9(h), is not a bar to resumption of the position." The conclusion reached in the prevailing opinion seems to me to impose an improper limitation upon Chief Justice Vinson's language.

A jury has found that in 1950 Gold was both a Communist and a liar, to put it bluntly. Yet to indulge in the presumption that he was therefore guilty of committing a criminal offense a year later in filing the 1951 affidavit is further than I can go on the record before us.

For the reasons outlined, I am unable to concur in the views of my colleagues, ably expressed by Judge Miller.