GOODMAN MANUFACTURING COMPANY, an Illinois corporation, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 11403.

United States Court of Appeals Seventh Circuit.

Nov. 10, 1955.

Edward S. Stern, Charles Aaron, Chicago, Ill., for petitioner, Aaron Aaron Schimberg & Hess, Chicago, Ill., of counsel.

David P. Findling, Associate Gen. Counsel, Rosanna A. Blake, Atty., N. L. R. B., Washington, D. C., Theophil C. Kammholz, Gen. Counsel, Chicago, Ill., Marcel Mallet-Prevost, Asst. Gen. Counsel, Samuel M. Singer, Atty., N. L. R. B., Washington, D. C., for respondent.

Before MAJOR, LINDLEY, and SCHNACKENBERG, Circuit Judges.

MAJOR, Circuit Judge.

This is a petition to review and set aside an order of the National Labor Relations Board, entered January 28, 1955, against Goodman Manufacturing Company of Chicago, Illinois. By the Board's order, petitioner was found guilty of an unfair labor practice under § 8(a) (5) and (1) of the National Labor Relations Act, 29 U.S.C.A. § 158(a) (5) and (1), because of its refusal to bargain with the United Electrical Radio and Machine Workers of America as the exclusive representative of certain of petitioner's employees who are in what the Board had determined to be the "appropriate unit." Petitioner was ordered to cease and desist from the unfair practice and to take the customary affirmative steps to give effect

to the Board's order. By its answer the Board requested enforcement of its order.

The composition of the "appropriate unit" is the generating cause of this controversy. The facts from which the controversy developed are these: In 1944, United Electrical, Radio and Machine Workers of America (hereinafter called the International) was certified as the exclusive bargaining agent for certain factory production and maintenance employees at petitioner's Chicago plant. At that time, the Board determined that the employees who were then styled "timekeeping clerks" should not be included in the bargaining unit. Subsequently, in 1951, upon a petition filed by the International, the Board changed its position. Over petitioner's objections, the Board decided that these timekeeping clerks or "timekeepers," as they are presently styled, could be appropriately included in the previously certified bargaining unit if they so desired. Two elections were held in which the timekeepers were permitted to choose either to be included in the unit with the production and maintenance workers or to have no collective bargaining representation. The record does not show the results of the first election, although it is stated in the Board's brief that all of the timekeepers voted for inclusion. In the second election, the result of which was certified on September 17, 1952, a majority of the timekeepers again voted for inclusion. After the second election, petitioner refused to bargain with Local No. 1150 of the International (hereinafter called the Local Union) as the timekeepers' representative. On November 19, 1952, the Local Union charged petitioner with unfair labor practices, and on February 5, 1953, the general counsel of the Board issued a complaint.

Throughout these proceedings petitioner has sought to justify its refusal to bargain on two grounds. The first is the claimed impropriety of the Board's inclusion of the timekeepers in the bargaining unit with the production and maintenance workers. The timekeepers, says petitioner, are an echelon of management, and the Board's action creates a serious situation of divided loyalties, and is so arbitrary and unreasonable as to be unlawful. The second ground is the asserted non-compliance by the International, District Council No. 11 of the U. E. R. & M. W. A., and the Local Union with the non-communist affidavit provision added to the National Labor Relations Act in 1947, 29 U.S.C.A. § 159(h). The statute requires that local union officers and the officers of any labor organization with which the local is affiliated file non-communist affidavits as a prerequisite to the Board's authority to issue a complaint. The District Secretaries and Trustees of the International, at times relevant to this unfair labor practice proceeding, had not filed such affidavits. These officials, according to petitioner, are officers within the meaning of the statute; hence, the charge of non-compliance.

The first of these grounds directly involves the substantive merits of the controversy, while the second is jurisdictional in character. Accordingly, we should first direct our attention to the second ground because it has been definitely settled that a valid complaint, arising from a local union's charge of an unfair labor practice, may be issued against an employer only if the statute's anti-communist requirement has been satisfied. N. L. R. B. v. Highland Park Mfg. Co., 341 U.S. 322, 325, 71 S.Ct. 758, 95 L.Ed. 969; N. L. R. B. v. Dant, 344 U.S. 375, 73 S.Ct. 375, 97 L.Ed 407; N. L. R. B. v. Atlanta Metallic Casket Co., 5 Cir., 205 F.2d 931.

When specific application is made of this general proposition, the question arises as to how and by whom it is to be determined whether there is such compliance. The Board contends that the matter is one for its own exclusive administrative determination, and that an employer may not litigate the compliance issue in an unfair labor practice proceeding. Considerations based on the policy of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., lend

some weight to this argument. The effective administration of the Act and the disposition of unfair labor practice charges should not be unnecessarily hampered or delayed. Nevertheless, the Board's present contention is too broad, for the Supreme Court has recognized that under some circumstances there may properly be judicial review of a union's compliance status.

In N. L. R. B. v. Highland Park Mfg. Co., supra, after holding that the C.I.O. was a labor organization, the Supreme Court affirmed the decision of the Court of Appeals which denied enforcement of a Labor Board order requiring the employer to bargain. The basis for the decision was the admitted fact that certain national officers of the C.I.O. had not filed non-communist affidavits at times relevant to those proceedings. To be sure, the language of the Highland Park opinion, 341 U.S. at page 325, 71 S.Ct. at page 760, indicated that there are limits upon the scope of judicial review:

"If there were dispute as to whether the C.I.O. had filed the required affidavits or whether the documents filed met the statutory requirements and the Board had resolved that question in favor of the labor organizations, a different question would be presented."

But the opinion concluded, 341 U.S. at pages 325–326, 71 S.Ct. at page 761, with the positive statement:

"We think * * * that an issue of law of this kind, which goes to the heart of the validity of the proceedings on which the order is based, is open to inquiry by the courts when they are asked to lend their enforcement powers to an administrative tribunal."

■ A number of decisions by Courts of Appeals since the Highland Park case have developed more definite limits on the scope of judicial review of the matter of compliance. It appears that courts ought not inquire into the factual or merely formal aspects thereof. Thus, in N. L. R. B. v. Sharples Chemicals, Inc., 6

Cir., 209 F.2d 645, it was held that the "veracity" of a non-communist affidavit, admittedly filed, could not be litigated in an unfair labor practice proceeding. Similarly, in N. L. R. B. v. Vulcan Furniture Mfg. Corp., 5 Cir., 214 F.2d 369, 371, the issue of "the truthfulness of the affidavits" or "whether the ostensible officers filing them are the true directors of the union involved" were outside the scope of judicial review; however, express recognition was made of the point that a different situation would have been presented if there had been "no ostensible compliance." This court, in American Rubber Products Corp. v. N. L. R. B., 214 F.2d 47, 55, noted the distinction between "the *fact* of compliance", which is not litigable and "the *necessity* of compliance, which was the issue involved in N. L. R. B. v. Highland Park Mfg. Co."

To be contrasted with these cases is N. L. R. B. v. Coca-Cola Bottling Co. of Louisville, 6 Cir., 219 F.2d 441, certiorari granted, 76 S.Ct. 49, wherein the Court of Appeals for the Sixth Circuit, notwithstanding the Board's contention that such a matter could not be litigated by the employer, ordered the Board's trial examiner to take evidence with respect to the status and jurisdiction of one Taylor, the C.I.O. Regional Director for Kentucky, who admittedly had not filed a non-communist affidavit. The court's order was based squarely on the employer's right to a judicial review of the substantial legal aspects of the compliance issue, and it cited as authority the Highland Park Mfg. Co. case. We are aware, as noted, that the Supreme Court has granted a writ of certiorari in the Coca-Cola Bottling Co. case. However, since we think that the statement of the law therein is correct and not in conflict with those decisions holding that the factual and formal aspects of compliance are outside the scope of judicial review, we see no occasion to defer a decision in the instant case.

■ Under these authorities, the instant case appears to be one where judicial inquiry into the union's compliance status is proper. Here, as in the High-

land Park Mfg. Co. and Coca-Cola Bottling Co. cases, there is no dispute that the union officials who petitioner claims are "officers" within the statutory meaning had not filed non-communist affidavits at relevant times. Indeed, there is no factual disagreement at all, but only a disagreement concerning the Board's conclusions from admitted facts. And if petitioner's claim that the Board reached incorrect conclusions is well founded, then there is no legal basis for the unfair labor practice proceeding.

The Board determined, in a separate administrative proceeding, that neither the District Secretaries nor the Trustees of the International were officers within the meaning of 29 U.S.C.A. § 159(h). With respect to the District Secretaries, this determination was said to be based upon an earlier Labor Board decision, Sunbeam Corporation, 98 N.L.R.B. 525. With respect to the Trustees, the conclusion was reached under § 102.13(b) (3) of the Board's Rules and Regulations which, subject to an exception not here material, provides: "The term 'officer' shall mean any person occupying a position identified as an office in the constitution of the labor organization * * *." It may be noted that the conclusion that the International Trustees were not officers was made notwithstanding two earlier decisions of the Board which held that the trustees of U. E. R. & M. W. A. locals were officers within the meaning of the statute, Compliance Status of Local No. 1150, U. E. R. & M. W. A., 96 N.L.R.B. 1029; Compliance Status of U. E. R. & M. W. A. (UE), Local 1421, 107 N.L.R.B. 147.

■ The Board's own regulation appears inconsistent with its conclusion. As noted, this regulation provides that an officer is one occupying a position identified as an office in the labor organization's constitution. Thus, the designation "officer" is not confined to one of the very few persons who hold highest rank and perform executive functions at the highest level. It includes those who hold positions of responsibility and trust which, in the labor organization's own view, are of sufficient importance to be established by its constitution. While the International's constitution does not confer the title "officer" upon District Secretaries and Trustees or describe their respective positions as "offices," that instrument does expressly designate that District Secretaries shall be members of the International's General Executive Board, does create the position of International Trustee, and sets forth clearly the duties which the persons who occupy these positions are to perform. The constitutional source of these positions establishes, in large measure, their distinguishing characteristics and renders untenable the Board's argument that if District Secretaries and Trustees of the International are liable to file non-communist affidavits, such affidavits would also be required of organizers, stewards and other lower-level union functionaries.

■■ The District Secretaries, pursuant to Article 10 of the International's constitution, together with the General President, General Secretary-Treasurer, Director of Organization, and the twelve General Vice Presidents—all of whom are regarded by the Labor Board as officers—are members of the General Executive Board. This body exercises general supervisory and policy making powers. In these important areas, as one of the twenty-seven members of the General Executive Board, a District Secretary can exert as much control, direction and influence as any one of the executive officers or General Vice Presidents. According to the controlling interpretation of the purpose of 29 U.S.C.A. § 159(h), contained in American Communications Ass'n, C. I. O. v. Douds, 339 U.S. 382, at page 407, 70 S.Ct. 674, at page 688, 94 L.Ed. 925, the non-communist affidavit requirement is directed at persons "when, as officers, they direct union activities", or, as alternatively phrased in Mr. Justice Frankfurter's concurring statement, at persons "who hold positions of official power", 339 U.S. at page 418, 70 S.Ct. at page 694. The District Secretaries are in this category; therefore, we

hold that they are officers. Sunbeam Corporation, 98 N.L.R.B. 525, relied upon by the Board, discloses nothing which would impel or even be persuasive of a different conclusion.

The International Trustees are not members of the General Executive Board, and the incidents of their positions differ in several respects from those of the other officers. Nevertheless, we hold that they, too, are officers. By Article 9 of the International's constitution, the three Trustees (there is also one Alternate) are to take charge of the International's property, audit all of its books and records and report to the convention, by which they are elected. Also, the Trustees are the persons to whom the procedure for recalling general officers of the International is entrusted. The duties and functions of the International Trustees closely parallel those performed by the local union trustees at the local level. As noted above, the Board has twice determined that the trustees of U. E. R. & M. W. A. locals are officers. Rather than being "inapposite," we think that a valid analogy may be drawn between the two situations, and that the results in the compliance proceedings reported at 96 N.L.R.B. 1029 and 107 N.L.R.B. 147 reinforce the conclusion that the International Trustees are officers.

By disposing of this petition for review for reason of non-compliance of the District Secretaries and Trustees with 29 U.S.C.A. § 159(h), we find it unnecessary to decide whether District Council 11 of the U. E. R. & M. W. A. is a labor organization. Similarly, we do not pass upon the larger question concerning the alleged impropriety of the inclusion of the timekeepers in the bargaining unit with the production and maintenance employees. Such an issue would be ripe for judicial review, if at all, only upon a record free from the invalidating circumstance of non-compliance.

The petition to review, set aside and vacate the involved order is allowed. It follows that the Board's request for enforcement is denied.